744 A.2d 137 (2000)
162 N.J. 252
STATE of New Jersey, Plaintiff-Appellant,
v.
G.V., Defendant-Respondent.
Supreme Court of New Jersey.
Argued September 14, 1999.
Decided January 27, 2000.
*138 Teresa A. Blair, Deputy Attorney General, for plaintiff-appellant (John J. Farmer, Jr., Attorney General of New Jersey, attorney).
Alan I. Smith, Designated Counsel, for defendant-respondent (Ivelisse Torres, Public Defender, attorney).
PER CURIAM.
A jury has convicted defendant of the repeated sexual molestation of his young daughter during the five-year period between 1985 and 1990. Some of the evidence admitted at trial related to acts of sexual molestation that he had allegedly committed on an older sister of the victim. Those offenses were claimed to have occurred years before the offenses charged in the indictment.
The trial court instructed the jury that the evidence should not be considered as demonstrating that defendant had a disposition to commit the offenses charged, but failed, more specifically, to explain to the jury the relevance of that evidence to material issues that were genuinely in dispute and, thus, to constrict the jury's consideration of that evidence to such issues as were genuinely in dispute.
The jury convicted defendant of aggravated sexual assault, sexual assault, endangering the welfare of his child, and terroristic threats. After merging the sexual assault conviction into the aggravated sexual assault conviction, the court sentenced the defendant to an aggregate term of 15 years imprisonment.
In an unreported opinion, the Appellate Division reversed the convictions. The Appellate Division found that the older sister's testimony was inadmissible because it constituted other-crime evidence that was not relevant to prove intent or to disprove possible defenses of accident or mistake (the purposes for which the trial court had admitted the evidence), and was more prejudicial than probative.
*139 We granted the State's petition for certification. 157 N.J. 645, 725 A.2d 1126 (1999).

I
Because the victim and her older sister have the same first initial, we shall refer to them by pseudonyms. We shall also refer to their mother by a pseudonym. The victim, Laura, was born in 1979. She lived in Monmouth County with her mother, Nancy, her older sister, Linda, two younger brothers, and her father, defendant G.V. In 1985, when Laura was six years old, her father began to molest her, frequently touching her intimate parts or having her touch his. When Laura was eight years old, defendant began having sexual intercourse with her. On some occasions, defendant forced Laura to engage in sexual activities with her younger brother. Defendant committed these acts at night while Laura's mother was at work.
A family friend described an occasion when visiting defendant's home. She was seated directly across from the couch where defendant and Laura were sitting. She saw Laura begin to rub defendant's shoulders. Defendant brought Laura on his lap and started "stroking" the outside of her thigh. The woman thought that was done in a "sexual way" but dismissed the thought. She and her husband never mentioned the incident to anyone.
Laura believed that what she and her father were doing was a secret. She never told anyone about it because she was afraid. Defendant had threatened her that if she told anyone, she, her family, and her pets would be killed. The conduct ended in 1990 when Laura was ten years old.
About 1989, the family structure changed. Linda (the older sister) married and Laura's mother and father separated. In January of 1992, defendant was visiting at the family home when Linda and her husband, Walter, were present. There was an altercation between defendant and Walter because defendant brought his girlfriend to the house. Defendant threatened to kill Walter. Nancy called the police and later obtained a temporary restraining order against the defendant. Two days later, Nancy agreed to vacate the restraining order because she thought that they could reconcile.
After Nancy vacated the restraining order, Laura experienced deep depression. Relatives found Laura in the kitchen staring into space, unable to speak, with her body clenched. She was hospitalized for her disorder. While attending a group session at the hospital, Laura confided in another girl that she had been sexually assaulted by her father. The girl advised Laura to report the matter to one of the attendant doctors. Laura told a nurse. Hospital staff informed the Division of Youth and Family Services and Laura's mother about the sexual assaults. Laura had not been able to tell her mother because she was embarrassed and ashamed. When Nancy told her other daughter, Linda, about the sexual assaults on Laura, she asked Linda whether their father had ever sexually molested her. Linda revealed for the first time that she too had been sexually assaulted by her father.
Linda said that defendant had sexually abused her from the age of four to eight. When Linda was six years old, defendant began having sexual intercourse with her. The assaults occurred at night while Nancy, was at work. A complaint was filed charging defendant with the sexual abuse of Laura. (Defendant was not charged with the attacks on Linda because the statute of limitations had expired.) At trial, defendant denied the charges, testified, and presented character witnesses. He asserted that the charges had been fabricated. He contended that the family was angry because he had left Nancy for another woman.

II
Linda's testimony that her father had sexually assaulted her is referred to as *140 other-crime evidence. The principles that govern the admission of other-crime evidence were recently restated in State v. Marrero, 148 N.J. 469, 691 A.2d 293 (1997). At the time of Marrero's trial, the admissibility of other-crime evidence was controlled by Evidence Rule 55. Currently, the admissibility of other-crime evidence is governed by N.J.R.E. 404(b), which states:
Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the disposition of a person in order to show that he acted in conformity therewith. Such evidence may be admitted for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident when such matters are relevant to a material issue in dispute.
For convenience, we will conform the references in Marrero to the new rule.

Evidence Rule [404(b) ] makes clear that other-crime evidence is only admissible if relevant to prove some other fact genuinely in issue. State v. Oliver, 133 N.J. 141, 151, 627 A.2d 144 (1993); State v. Stevens, 115 N.J. 289, 558 A.2d 833 (1989). Where the other-crime evidence tends to make the existence of a material fact reasonably likely, it is admissible subject to the "probativeness/prejudice" balancing under Evidence Rule 4, now N.J.R.E. 403.
In addition to being relevant to an issue genuinely in dispute, the other-crime evidence must "be necessary for [the disputed issue's] proof." Stevens, supra, 115 N.J. at 301, 558 A.2d 833. Because of its damaging nature, in determining the probative worth of other-crime evidence, "a court should consider... whether its proffered use in the case can adequately be served by other evidence." Id. at 303, 558 A.2d 833; see also Oliver, supra, 133 N.J. at 151, 627 A.2d 144 (stating that "[a]n important factor in weighing the probative value of other-crime evidence is whether other, less-inflammatory evidence can prove the same fact in issue").
Once it is determined that the other-crime evidence is material to a fact genuinely in issue and that the other-crime evidence is necessary, "the probative value of the proffered evidence [must] be carefully balanced against the danger that it will create undue prejudice against the defendant." Stevens, supra, 115 N.J. at 302, 558 A.2d 833. Where the probative value is outweighed by prejudice to the defendant, then it is inadmissible. Evid. R. 4 (currently N.J.R.E. 403). Consequently, the primary focus of Evidence Rule [404(b) ], when examined in conjunction with Evidence Rule [403], is to view it as a rule of exclusion rather than a rule of inclusion. State v. Cofield, 127 N.J. 328, 337-38, 605 A.2d 230 (1992).
After many years of decisional law determining when other-crime evidence is admissible, a four-part test has been distilled. That test is designed "to avoid the over-use of extrinsic evidence of other crimes of wrongs." Id. at 338, 605 A.2d 230. That rule is as follows:
1. The evidence of the other crime must be admissible as relevant to a material issue;
2. It must be similar in kind and reasonably close in time to the offense charged;
3. The evidence of the other crime must be clear and convincing; and
4. The probative value of the evidence must not be outweighed by its apparent prejudice.

[Ibid. (quoting Abraham P. Ordover, Balancing the Presumptions of Guilt and Innocence: Rules 404(b), 608(b) and 609(a), 38 Ermory L.J. 135, 160 (1989)).]
When other-crime evidence is admitted, "the court must instruct the jury on the limited use of the evidence." Cofield, *141 supra, 127 N.J. at 340-41, 605 A.2d 230; see also Stevens, supra, 115 N.J. at 304, 558 A.2d 833. Because of the inherently prejudicial nature of other-crime evidence, the court's instruction "`should be formulated carefully to explain precisely the permitted and prohibited purposes of the evidence, with sufficient reference to the factual context of the case to enable the jury to comprehend and appreciate the fine distinction to which it is required to adhere.' " Cofield, supra, 127 N.J. at 341, 605 A.2d 230 (quoting Stevens, supra, 115 N.J. at 304, 558 A.2d 833).

[State v. Marrero, supra, 148 N.J. at 482-83, 495, 691 A.2d 293.]
From Marrero we distill the principles that are crucial to the decision in this case:
 The other-crime evidence must be relevant to an issue "genuinely in dispute."
 The other-crime evidence must be "necessary for [the disputed issue's] proof."
 The court must "explain precisely" to the jury the permitted and prohibited uses of the evidence.
Because those controlling principles were not followed by the trial court, the Appellate Division was constrained to reverse the conviction. Our opinion will review that judgment and seek to correct the implication in the Appellate Division opinion that the other-crime evidence in this case might be inadmissible for any purpose.

III
Relying on State v. Cusick, 219 N.J.Super. 452, 530 A.2d 806 (App.Div.), certif. den., 109 N.J. 54, 532 A.2d 1118 (1987), the trial court admitted the evidence of prior sexual abuse. In Cusick, the defendant was charged with sexually assaulting two victims. Cusick argued that he had intended only to swing and cradle one of the victims and that any sexual contact was inadvertent. The Cusick court admitted other-crime evidence to rebut the defendant's claim of mistake and to establish the defendant's intent. The Cusick court gave a limiting instruction directing the jury to consider the evidence "as it may bear on the issue of whether the alleged touching of [the victims] was accidental or it was a mistake. Likewise, it might also bear on the defendant's motive for allegedly touching the victims here. This is to obtain some sort of sexual gratification, or on the issue of his intention to touch the children, victims here." Id. at 466, 530 A.2d 806.
The trial court reasoned that Cusick's principles would apply to this case. In its unreported opinion, the Appellate Division explained how in this case neither mistake nor intent to obtain sexual gratification was genuinely in dispute. The Appellate Division explained:
[T]he trial court adopted the prosecutor's view that earlier attacks on [Linda, the older sister] were relevant to intent in two respects. As summarized in [the State's] brief: the judge "reasoned that the prior sexual attacks were material because a possible defense by defendant of accident or mistake could be raised by defendant, claiming that he was merely being affectionate towards his daughter and showing her fatherly love. The judge also noted that the State was required to prove that defendant committed the acts for the purpose of sexual arousal or gratification. He thus found that the prior sexual assaults would bear on this issue as it showed defendant committed the sexual assaults on both victims when they were around the same age, between four and eight years old."
The supposed "possible defense" was never raised by the defendant. Moreover, to do so in the context of this case would have been absurd. If we were dealing with an isolated incident, or even a few separate occasions, of allegedly improper touching, the "possible defense" might have been an issue. But *142 this case involves an horrendous course of patent sexual depravity which continued for years. No reasonable defense, under these circumstances, would rely on the theory that these atrocious acts were simply misinterpreted expressions of fatherly affection.
Nor can it be fairly said that if the defendant committed the acts in question, there was a material factual dispute with regard to whether he was seeking sexual gratification. As stated in State v. Stevens, 115 N.J. 289, 301, 558 A.2d 833 (1989), a "necessary corollary to the principle that other-crime evidence can be admitted to prove any fact in issue... is the requirement that the "issue" be genuine, and that the other-crime evidence be necessary for its proof." Neither of these requirements were satisfied here.
As the prosecutor's summation plainly demonstrates, the evidence of defendant's sexual depravity with his first daughter was offered for no reason other than to demonstrate that defendant was predisposed to engaging in sexual conduct with his daughters in their prepubescent years. The evidence was not admissible under N.J.R.E. 404(b), supra. Therefore, the convictions must be set aside and the matter remanded for a new trial.
As the Appellate Division noted, the analytical errors were compounded by the prosecutor's misuse of the testimony. During summation, the prosecutor made no attempt to suggest to the jury that the other-crime evidence should be considered only as bearing on defendant's intent to obtain gratification or to rebut a defense of mistaken physical contact. Instead, the prosecutor described the other-crime events in broad terms that, in essence, urged the jury to use defendant's character and past conduct as a basis for inferring that Laura's testimony was true.
The Appellate Division opinion contains longer excerpts of the prosecutor's summation. The following example will suffice to make the point:
[Laura] said the defendant would say it was our secret, don't tell anybody. And then as [Linda] got older, sexual intercourse began. Similar fact pattern with [Laura]. It is just the way he operates. It is not two girls getting together. That's what he was interested in doing, having sex with younger girls, pre-teen age girls.

[Emphasis added.]
If that is not an allusion to propensity, then we do not know what would be.
Our dissenting members suggest that the defenses of accident or mistake or absence of intent to seek sexual gratification were genuinely disputed at least in respect of the charges of criminal sexual contact (that is, sexual contact without penetration as in the "leg-rubbing" incident). If that were the case, then the trial court would have to have had "explain[ed] precisely" to the jury that limited purpose. It did not do so. Moreover, we doubt that the trial court would have found that so limited a purpose would pass the "probativeness/prejudice" test required by Marrero, supra, 148 N.J. at 482, 691 A.2d 293.
Because of the hardship that will be imposed by a retrial of this case, we must consider whether the error may be viewed as harmless. Our courts have on occasion found that inadequate (but not incorrect) limiting instructions were not so prejudicial to a defendant's fair-trial rights as to require the reversal of a conviction. State v. G.S., 145 N.J. 460, 476, 678 A.2d 1092 (1996); State v. Stevens, supra, 115 N.J. at 309, 558 A.2d 833; State v. Cusick, supra, 219 N.J.Super. at 467, 530 A.2d 806. Our dissenting members suggest that because the other-crime evidence might have been admissible for purposes other than to establish the main charge of aggravated sexual assault by penetration, we may view the case as though it were like G.S., Stevens, or Cusick. It is simply not possible to do so. In each of those cases the other-crime evidence was relevant to an issue *143 genuinely disputed in the trial of the charge that led to conviction. In G.S., supra, the evidence of prior sexual abuse of children in Monmouth County was relevant to establish that the sexual contacts in Sussex County, for which he was convicted, were not "inadvertent, accidental or unplanned." 145 N.J. at 469, 678 A.2d 1092. In Stevens, supra, the prior encounters by a law enforcement officer with women exhibited a purpose to seek sexual gratification, not to fight crime. 115 N.J. at 308, 558 A.2d 833. In Cusick, supra, the prior sexual misconduct tended to prove that the subject conduct was not an accident or mistake. 219 N.J.Super. at 465, 530 A.2d 806. As the Appellate Division noted, the genuinely disputed issues in this case were not that the intercourse with a child was the result of a mistake because inadvertent or accidental, or evidenced an absence of intent to seek sexual gratification. Intellectual honesty compels the conclusion that there is no genuine dispute that one who has sexual intercourse with an eight-year-old daughter has made a "mistake" or is not seeking sexual gratification. The analysis in G.S., Stevens and Cusick simply does not apply when the evidence is admitted for the wrong purpose. Neither absence of intent or accident or inadvertence or motive were genuinely at issue as to the main crime of sexual assault involving penetration.
Because defendant objected to admission of the evidence, the error in admitting the other-crime evidence cannot be viewed under the less demanding plain error standard of Rule 2:10-2. Nor can the error be salvaged under the harmless error doctrine. If the evidence could not have come in on the main charge, as it did, the error cannot be viewed as harmless. Nothing could be more prejudicial than the erroneous admission of such testimony.
The [harmless error] rule is essential "to conserve judicial resources," but it must be applied with caution so as to assure "the vitality of the rules and procedures designed to assure a fair trial."
There is enormous potential for prejudice in the improper admission of a defendant's prior convictions. Commentators have suggested that such error should be considered harmful per se. See The Riddle of Harmless Error, where Chief Justice Traynor wrote:
The erroneous admission of evidence of other crimes also carries such a high risk of prejudice as ordinarily to call for reversal.

[State v. Atkins, 151 N.J.Super. 555, 570, 377 A.2d 718 (App.Div.1977), rev'd, primarily on issue of intoxication charge and that evidence of burglary was "undisputed," 78 N.J. 454, 396 A.2d 1122 (1979) (internal citations omitted) (emphasis added in original).]
"[T]he question whether an error is reason for reversal depends finally upon some degree of possibility that it led to an unjust verdict." State v. Macon, 57 N.J. 325, 335, 273 A.2d 1 (1971). "[U]pon that question the reviewing judge [is] inevitably remitted to his [or her] own conscientious judgment." Id. at 338, 273 A.2d 1. This Court has sought to prevent overuse of the "harmless error" doctrine. In State v. Czachor, 82 N.J. 392, 404, 413 A.2d 593 (1980), the Court explained that "errors which impact substantially and directly on fundamental procedural safeguards ... are not amenable to harmless error rehabilitation." As stated in State v. Simon, 79 N.J. 191, 206, 398 A.2d 861 (1979): "Errors impacting directly upon ... sensitive areas of a criminal trial are poor candidates for rehabilitation under the harmless error philosophy...." For this reason, the rule of harmless error should be summoned only with great caution in dealing with the breach of fundamental procedural safeguards "designed to assure a fair trial." (Citations omitted). "There is widespread agreement that other-crime evidence has a unique tendency to turn a jury against the defendant. The likelihood of *144 prejudice is acute when the proffered evidence is proof of a defendant's uncharged misconduct." State v. Stevens, supra, 115 N.J. at 302, 558 A.2d 833.
Finally, even if the evidence had been admissible on the subsidiary issues in the case, the charge in this case left the jury wholly unguided as to how to use the evidence for such limited purposes. An erroneous charge will rarely stand on the ground that it was harmless error. State v. Weeks, 107 N.J. 396, 410, 526 A.2d 1077 (1987). Although reviewing courts are ordinarily reluctant to reverse on the ground of plain error when no objection to the charge has been made, it has been "repeatedly emphasized that incorrect instructions of law are poor candidates for rehabilitation under the harmless error theory." Ibid. (citations omitted). These well-settled principles compel the conclusion that defendant's conviction must be reversed and the matter remanded for a new trial. In reversing the defendant's conviction in Oliver, the Court distinguished the cases in which instructional errors had been found to be harmless:
By contrast, the trial court in this case did not explain the relationship between the other-crime evidence and the issues and facts on which it could be considered. Although the court did clearly instruct the jury that it was not to use the evidence to determine that defendant was a bad person or that he had been disposed to commit the crimes charged in the indictment, it did not clearly instruct the jury on how it could use the other-crime evidence. Precisely that situation prompted this Court to find reversible error in Cofield.

[State v. Oliver, supra, 133 N.J. at 158-59, 627 A.2d 144 (emphasis added).]

IV
Although, then, we agree with the Appellate Division that the other-crime evidence was irrelevant to the aggravated sexual assault charge and inadmissible on that count, the evidence does have relevance to one of the defenses raised by the defendant at trial. It was a theory of the defense that Laura's story of sexual molestation was fabricated by Laura as revenge for her father's having abandoned her mother and her anger over his having come to the home with a new girlfriend. Evidence is relevant if it tends "to prove or disprove any fact of consequence to the determination of the action." N.J.R.E. 401. In determining whether evidence is relevant, the inquiry should focus on the "logical connection between the proffered evidence and a fact in issue." State v. Hutchins, 241 N.J.Super. 353, 358, 575 A.2d 35 (App.Div.1990), and "whether the [evidence offered] `renders the desired inference more probable than it would be without the evidence.'" State v. Davis, 96 N.J. 611, 619, 477 A.2d 308 (1984) (quoting State v. Deatore, 70 N.J. 100, 358 A.2d 163 (1976)).
If the evidence offered makes the inference to be drawn more probable, then the evidence should be admitted unless otherwise excludable by a rule of law. Biunno, Current N.J. Rules of Evidence, comment 1 on N.J.R.E. 401 (1998-1999). The fact in issue is bias on the part of Laura. Does Linda's testimony make it more probable that Laura's testimony was not the product of bias? In some sense Linda's testimony is similar to that which was offered in Stevens, supra, 115 N.J. at 295-97, 558 A.2d 833. Recall that in Stevens a police officer was charged with official misconduct involving strip searches of arrested women that were motivated by the officer's desire for sexual gratification. The State presented evidence of previous incidents in which the officer induced other female arrestees to undress or provide sexual favors. If the testimony of the other women in Stevens had a tendency in reason to make more probable the inference that the strip searches had a purpose other than law enforcement, the testimony of another daughter in this case would *145 appear to make it more probable that bias was not the motivation for Laura's testimony. Put another way, is it logical to conclude that two daughters would be less likely to trump up testimony than one? See also State v. G.S., supra, 145 N.J. at 475, 678 A.2d 1092 (holding that evidence of uncharged prior sexual assaults on the same victim were admissible as bearing on the credibility of the victim).
The difficulty in using the other-crime evidence to assess bias on the part of the child-victim in this case is that bias of the witness because of a vendetta against the father is not, in the first instance, a material issue that is genuinely in dispute. It is only when defendant puts the bias of the witness (on account of a vendetta) into issue that the evidence would be admissible. If, at the hearing prior to trial under Evidence Rule 104, defendant disclaims the use of the vendetta defense, the State would have no basis for admitting the evidence. On the other hand, if the defendant renews the vendetta defense, it appears to us that the testimony of the older sister is relevant to show that the testimony of Laura is not the product of bias. Of course, the trial court would have to complete the Marrero analysis, balancing the probative worth of the evidence against its prejudicial effect. (Not all members concurring in Part IV would require the probative-prejudice analysis, Coleman, J., concurring, post at 281, 744 A.2d at 154, but we believe that the trial court should do the complete analysis in light of the revised purpose for which the evidence is to be offered.) The State also suggests that the other-crime evidence might be relevant to establish the disputed fact of access or the opportunity to have been alone with the child. See State v. Oliver, supra, 133 N.J. 141, 627 A.2d 144 (discussing relevance of prior sexual attacks on women in an upstairs apartment when defense of feasibility was asserted). The issue of feasibility, however, was not "genuinely in dispute," Marrero, supra, 148 N.J. at 482, 691 A.2d 293, and, unless it is genuinely disputed on retrial, cannot provide a basis for admission of the other-crime evidence.
The judgment of the Appellate Division is affirmed. The matter is remanded to the Law Division for further proceedings in accordance with this opinion.
LONG, J., concurring in part and dissenting in part.
The Appellate Division concluded that Linda's testimony was improperly admitted at defendant's trial and that a retrial is in order. To the extent that the majority affirms that conclusion, I concur.
Where I part company from my colleagues is in connection with their separate determination that Linda's testimony may be relevant, and therefore possibly admissible on another basisto refute the so-called "vendetta defense." More particularly, the majority reasons that Linda's testimony may be admissible because it makes it "more probable" that Laura's testimony was not the product of bias. I respectfully disagree.
Linda's testimony does not, in any legitimate way, address Laura's bias or vendetta. The kind of evidence that would be relevant on those issues would be testimony, for example, from Linda, or some other person, that Laura expressed no animosity against defendant, indicated her love for him or accepted her parents' break up with equanimity. Linda's testimony could not be further from that point.
Indeed, the only logical link between Linda's testimony and Laura's possible bias is defendant's propensity to commit sex crimes. The only way that Linda's testimony can be related to Laura's bias is if a jury reaches the conclusion that because defendant committed sexual acts against Linda, it is more likely that he committed them against Laura and thus, it is more likely that Laura is being truthful and unbiased when she reports them. This is exactly what N.J.R.E. 404(b) was meant to prohibit. Linda's testimony does *146 not make it more likely that Laura is not biased. It simply does not follow that two daughters, angry at their father's treatment of their mother, would be less likely than one to trump up a story. What is more likely is that the jury will conclude that because defendant had sexual contact with Linda he must have done so again with Laura.
The Federal Rules have recently cast off 200 years of evidentiary practice in cases like this by allowing the use, for any relevant purpose, of sexual assault or child molestation evidence not charged in the indictment or information. Fed.R.Evid. 413, 414, 415. See Jeffrey G. Pickett, The Presumption of Innocence Imperilled: The New Federal Rules of Evidence 413-415 and the Use of Other Sexual Evidence in Washington, 70 Wash. L.Rev. 883 (1995). Based on their prior opinions as to the importance of N.J.R.E. 404(b), I do not believe that my colleagues in the majority would subscribe to such a scheme. It is therefore hard for me to understand why they are willing to allow this most meager pretext to justify admission of what is clear propensity evidence, when by doing so they are effectively dismantling the Rule.
Chief Justice PORITZ joins in this opinion.
COLEMAN, J., dissenting from the judgment of the Court reversing the convictions and concurring with Justice O'HERN's and Justice STEIN's view that the other-crime evidence is admissible to rebut the vendetta defense.
The majority has concluded that defendant's convictions for aggravated sexual assault, sexual assault, endangering the welfare of a child, and terroristic threats must be reversed. The basis for the reversal is the Court's conclusion that other-crime evidence presented by the victim's sister was too prejudicial. Justices O'Hern and Stein nonetheless conclude that the same evidence, relevant to rebut the vendetta defense in the prior trial, may be reintroduced at a new trial if that defense is asserted again. Because I find any error related to the admissibility and jury instructions regarding that evidence to be harmless, I would uphold the convictions. Hence, I dissent.

I.
L.V., the victim, was born in 1979 and lived in the same house with her mother, N.V., and her father, the defendant. L.V.'s older sister, L.J.V., who was born in 1971, and their two younger brothers also lived in the same house with their parents. In 1985, when L.V. was six years old, defendant began frequently fondling her breasts and vagina. From time to time, defendant had L.V. touch defendant's penis. When L.V. was eight years old, defendant began having sexual intercourse with her. On some occasions, defendant forced L.V. to engage in sexual relations with one of her brothers, who is four years younger than L.V. Defendant usually assaulted his daughter at night while N.V. was at work. Defendant threatened L.V. that if she told anyone, he would kill her, her family, and her cats. Defendant ended the incest in 1990 when L.V. was ten years old.
In 1988 or 1989, Marilyn Peterson (Peterson) and her husband visited defendant and his family. Peterson testified that, while the Petersons, defendant, and L.V. were in the living room, she noticed L.V. rubbing defendant's shoulder. Defendant then placed L.V. on his lap and started "stroking" the outside of her thigh in what appeared to be a "sexual way."
In January 1992, N.V. obtained a temporary restraining order (TRO) against defendant for reasons unrelated to the alleged sexual misconduct. When L.V. learned that her mother had applied to have the TRO dismissed, L.V. became extremely upset. Her mother found L.V. staring into space, unable to speak, with her body "clenched." Shortly thereafter, L.V. was admitted for nine weeks to Riverview *147 and Fair Oaks Hospitals, where she was treated for anorexia and bulimia. While hospitalized at Fair Oaks, another girl confided in L.V. that she had been raped. Later that evening, L.V. told the girl about defendant's sexual attacks upon her. At the girl's advice, L.V. informed a nurse that her father had sexually assaulted her. On or about February 14, 1992, the Division of Youth and Family Services (DYFS) was notified; it informed N.V. Defendant was arrested on February 20, 1992. When N.V. asked L.J.V. whether she also had been sexually assaulted by defendant, L.J.V. responded affirmatively.
Before L.J.V. testified, the trial court conducted a hearing pursuant to N.J.R.E. 104(a) to determine the admissibility of other crimes or uncharged misconduct evidence to be presented by L.J.V. The trial court concluded that L.J.V.'s testimony was admissible on the issues of intent and the absence of accident or mistake. The trial court concluded that although the sexual misconduct against L.J.V. occurred when she was very young and six years prior to the alleged acts against L.V., the behavior was similar to that which defendant was alleged to have done to L.V. The trial court found the proffered testimony by L.J.V. more probative than prejudicial.
L.J.V. was twenty-five years old when she testified at trial in April 1996. She testified that defendant sexually abused her from the age of four to the age of eight, which was between 1975 and 1979. When she was six years old, defendant began having sexual intercourse with her daily. The assaults occurred at night while N.V. was at work or otherwise out of the house. Defendant told L.J.V. not to tell and warned her that if she did, he would hurt N.V.
Defendant testified and denied the charges, asserting that they had been fabricated. He testified that he "got in a scuffle about my girlfriend" with L.J.V. and N.V. on January 14, 1992, and a TRO was obtained as a result. He claimed that L.V. made up the charges against him because she was jealous and hurt that he had left the family for a girlfriend. He stated that the incident witnessed by Peterson was simply an attempt by him to apply rubbing alcohol to a scratch on L.V.'s leg. Finally, defendant testified that N.V. was at home and not working during the time when L.V. alleged that he sexually assaulted her. As noted previously, the jury convicted defendant on all charges.
The Appellate Division, however, found that the other-crime evidence was more prejudicial than probative, that insufficient grounds existed for the trial court to hold otherwise, and that the trial court had erred in relying on State v. Oliver, 133 N.J. 141, 627 A.2d 144 (1993), to admit the other-crime evidence. The Appellate Division concluded that the other-crime evidence was not admissible to show the absence of accident or mistake because defendant did not "claim[ ] that he was merely being affectionate towards his daughter and showing her fatherly love." The panel also found that the other-crime evidence was not admissible to show intent because there was no "material factual dispute with regard to whether [defendant] was seeking sexual gratification." The panel determined that the prosecution offered L.J.V.'s testimony "for no reason other than to demonstrate that defendant was predisposed to engaging in sexual conduct with his daughters in their prepubescent years."
The Court granted the State's petition for certification. 157 N.J. 645, 725 A.2d 1126 (1999).

II.

A.
The State argues that the trial court applied the correct standard when it decided to admit the other-crime evidence and that the Appellate Division exceeded the proper scope of appellate review of the trial court's determination. The State also *148 argues that the Appellate Division unfairly imposed on it "the burden to accurately anticipate a defendant's defense before use of other crimes evidence under N.J.R.E. 404(b) may be permitted." Finally, the State contends that even if the other-crime evidence was inadmissible, that error was harmless given the quantity and quality of the other evidence establishing defendant's guilt.

B.
First, I focus on the charges for which defendant was on trial to determine what evidence was relevant to establish the elements of the offenses. Generally, relevant evidence "means evidence having a tendency in reason to prove or disprove any fact of consequence to the determination of the action." N.J.R.E. 401. Here, circumstantial evidence was presented by L.J.V. to prove the absence of accident or mistake and to infer that the alleged touchings of L.V.'s intimate parts were for defendant's gratification. Circumstantial evidence, if relevant, will be admissible. Circumstantial evidence, however, may be "`so unrevealing as to be irrelevant.'" State v. Allison, 208 N.J.Super. 9, 17, 504 A.2d 1184 (App.Div.1985) (citation omitted).
Defendant was tried for first-degree aggravated sexual assault upon L.V., occurring on various dates between January 12, 1985 and January 12, 1990, by having vaginal intercourse with her while she was less than thirteen years old. "An actor is guilty of aggravated sexual assault if he commits an act of sexual penetration with another person [and] ... [t]he victim is less than 13 years old." N.J.S.A. 2C:14-2a(1). The mental culpability for this offense requires the actor to act knowingly. N.J.S.A. 2C:2-2c(3); State v. Zeidell, 154 N.J. 417, 428, 713 A.2d 401 (1998), see also State v. Rovito, 99 N.J. 581, 586, 494 A.2d 309 (1985). A person acts knowingly if he or she is aware of the nature of his or her conduct. N.J.S.A. 2C:2-2b(2). Defendant never asserted that the alleged vaginal intercourse with L.V. was either accidental or mistaken. Rather, he contended that he did not engage in the conduct.
Defendant also was tried for committing sexual assault upon L.V. on various dates between January 12, 1985 and January 12, 1990 while the victim was less than thirteen years old. "An actor is guilty of sexual assault if he commits an act of sexual contact with a victim who is less than 13 years old and the actor is at least four years older than the victim." N.J.S.A. 2C:14-2b. Here, "`[s]exual contact' means an intentional touching by the victim or actor, either directly or through clothing, of the victim's or actor's intimate parts for the purpose of degrading or humiliating the victim or sexually arousing or sexually gratifying the actor." N.J.S.A. 2C: 14-1d. "`Intimate parts' means ... sexual organs, genital area, anal area, inner thigh, groin, buttock or breast of a person." N.J.S.A. 2C:14-1e. To prove sexual assault, the State was obligated to demonstrate that L.V. was less than thirteen years old and that defendant touched her with the purpose or intent to degrade or humiliate L.V. or to sexually arouse or gratify himself.
Defendant was also charged with endangering the welfare of L.V. by engaging in the same sexual misconduct with her that formed the basis of the other counts. The other-crime evidence was not offered to sustain the charges of endangerment or terroristic threats. Consequently, I will restrict my analysis to whether other-crime evidence should have been introduced to establish a relevant disputed fact under the charges of aggravated sexual assault and sexual assault.

III.
At the time of defendant's trial in April 1996, the admissibility of other-crime evidence was governed by N.J.R.E. 404(b), which states:
Evidence of other crimes, wrongs, or acts is not admissible to prove the disposition of a person in order to show that *149 he acted in conformity therewith. Such evidence may be admitted for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident when such matters are relevant to a material issue in dispute.

[N.J.R.E. 404(b) ].
That rule makes it clear that other-crime evidence is admissible only if relevant to prove some other disputed fact genuinely at issue in the case. See generally State v. Marrero, 148 N.J. 469, 482, 691 A.2d 293 (1997); State v. Oliver, 133 N.J. 141, 627 A.2d 144 (1993); State v. Stevens, 115 N.J. 289, 300, 558 A.2d 833 (1989). "Where the other-crime evidence tends to make the existence of a material fact reasonably likely, [the other-crime evidence] is admissible subject to the `probativeness/prejudice' balancing under ... N.J.R.E. 403." Marrero, supra, 148 N.J. at 482, 691 A.2d 293. In other words, relevant evidence may be excluded pursuant to N.J.R.E. 403, which provides:
Except as otherwise provided by these rules or other law, relevant evidence may be excluded if its probative value is substantially outweighed by the risk of (a) undue prejudice, confusion of issues, or misleading the jury or (b) undue delay, waste of time, or needless presentation of cumulative evidence.

[N.J.R.E. 403].
Over the years, a four-part test has evolved for making the determinations required by N.J.R.E. 403(a) and 404(b). The test is as follows:
1. The evidence of the other crime must be admissible as relevant to a material issue;
2. It must be similar in kind and reasonably close in time to the offense charged;
3. The evidence of the other crime must be clear and convincing; and
4. The probative value of the evidence must not be outweighed by its apparent prejudice.

[State v. Cofield, 127 N.J. 328, 338, 605 A.2d 230 (1992) (internal citations omitted) ].
Relevancy is the hallmark of admissibility of evidence. In determining whether evidence is relevant, the inquiry should focus on "the logical connection between the proffered evidence and a fact in issue." State v. Hutchins, 241 N.J.Super. 353, 358, 575 A.2d 35 (App.Div.1990). "If the evidence offered makes the inference to be drawn more logical, then the evidence should be admitted unless otherwise excludable by a rule of law." State v. Covell, 157 N.J. 554, 565, 725 A.2d 675 (1999). Relevant evidence can be both direct and circumstantial. Here, L.J.V. offered only circumstantial evidence. Consequently, "[r]elevance is the screen which permits the admission of evidence of similar identifiably associated conduct while screening out evidence of misconduct which has no relationship with the conduct on trial." State v. Gookins, 263 N.J.Super. 58, 63, 621 A.2d 968 (App.Div.1993), rev'd on other grounds, 135 N.J. 42, 637 A.2d 1255 (1994).

A.
Under the first part of the Cofield test, I disagree with the trial court that L.J.V.'s testimony was relevant to whether defendant had vaginal intercourse with L.V., or what his motive or intention was, given that the child was between eight and ten years old. Indeed, the proffered defense to the charge of aggravated sexual assault was a general denial and not that he accidentally or mistakenly raped his daughter. Furthermore, the first-degree aggravated sexual assault based upon defendant having sexual intercourse with his eight to ten year old daughter did not require the State to prove sexual gratification. N.J.S.A. 2C:14-2a. Yet, the jury was instructed that it could consider L.J.V.'s testimony as bearing "on defendant's motive for allegedly touching or performing sexual intercourse upon [L.V.], that is, to obtain some sort of sexual gratification. Or on the issue of his intention to touch her or *150 to have intercourse with her." Thus, the first prong of the Cofield test, requiring the other-crime evidence to be relevant, was not satisfied regarding the aggravated sexual assault. None of L.J.V.'s testimony was relevant to establish an element of that charge. However, as will be discussed later, L.J.V.'s testimony was relevant to the vendetta defense raised as part of defendant's general denial to all of the charges.
Defendant also presented a general denial defense to the charge of sexual assault. The one possible exception was the single incident in 1988 or 1989 in which Peterson testified that she saw defendant stroking L.V.'s outer thigh in a "sexual way." Defendant's justification for that touching was that he was using rubbing alcohol to tend to a scratch of L.V.'s thigh. Although the defense to that event was neither accident nor mistake, but that the touching was for medicinal purposes, L.J.V.'s testimony was not relevant to any material issue related to the Peterson episode because that touching did not involve an intimate part of the body. N.J.S.A. 2C:14-1e. Because the Peterson episode did not involve an intimate part, defendant's intent or motive for that touching was not relevant.
Nonetheless, L.J.V.'s testimony was relevant to the other episodes of alleged sexual assault because one of the statutory elements of that offense required the State to prove the touching of L.V.'s intimate parts was for the purpose of degrading or humiliating the victim or for defendant's sexual arousal or sexual gratification. N.J.S.A. 2C:14-1d. Despite defendant's denial that he touched L.V.'s intimate parts, the State was required to prove both their occurrence and the unlawfulness of the touchings. Stevens, supra, 115 N.J. at 307, 558 A.2d 833. The jury was instructed that L.J.V.'s testimony could be used to draw an inference that the touching of L.V.'s intimate parts was unlawful as required by N.J.S.A. 2C:14-1d.

B.
The second prong of the Cofield test, requiring the other-crime evidence be similar in kind and reasonably close in time to the indicted offense of sexual assault, is satisfied. The incidents involving the two children are similar. L.J.V. testified that her father sexually assaulted her between the ages of four and ten and that he had sexual intercourse with her daily after she became six. The incidents with L.V. are alleged to have occurred at about the same age. I am also satisfied that the temporal requirement is met. The incidents with L.J.V. were about six years before the alleged sexual misconduct started with L.V. See State v. Hasher, 246 N.J.Super. 495, 498-99, 587 A.2d 1341 (Law Div. 1991) (finding six year difference between incidents not too remote). The temporal requirement is intended to enhance credibility. However, the nature of the crime is as important as the passage of time in evaluating credibility. State v. Sands, 76 N.J. 127, 144-45, 386 A.2d 378 (1978); see also Covell, supra, 157 N.J. at 569, 725 A.2d 675. The second prong of the Cofield test, will of necessity, make the other-crime evidence similar to proof of propensity. Hence, the Court has recognized that because of this admissibility requirement, other-crime evidence is almost always prejudicial. State v. G.S., 145 N.J. 460, 468, 678 A.2d 1092 (1996).

C.
Part three of the Cofield test requires that the other-crime evidence be clear and convincing. This factor requires some showing that the person against whom the evidence is being used actually committed the other crime or wrong. Burbridge v. Paschal, 239 N.J.Super., 139, 155, 570 A.2d 1250 (App.Div.), certif. denied, 122 N.J. 360, 585 A.2d 369 (1990). The State has the burden to prove the defendant's responsibility for the prior offense by clear and convincing proof. State v. Harvey, 121 N.J. 407, 433, 581 A.2d 483 (1990).
*151 The trial court noted that L.J.V.'s "recollection obviously has to be clouded because of the time lapse and the age of the alleged victim at that time," but nonetheless concluded that "the basic story sounds believable and I will not exclude the testimony on the grounds that it was not clear and convincing." Given the trial court's unique opportunity to assess L.J.V.'s credibility, that finding was not an abuse of discretion.

D.
The fourth prong of Cofield required the trial court to balance the probative value of L.J.V.'s testimony against its prejudicial impact as required by N.J.R.E. 403. Marrero, supra, 148 N.J. at 482, 691 A.2d 293. Because of the damaging nature of L.J.V.'s testimony, the trial court was obligated to "consider ... whether its proffered use in the case can adequately be served by other evidence." Stevens, supra, 115 N.J. at 303, 558 A.2d 833. In other words, under the fourth prong of the Cofield test, the availability of other, less-inflammatory evidence to prove a fact genuinely in issue is "[a]n important factor in weighing the probative value of other-crime evidence." Oliver, supra, 133 N.J. at 151, 627 A.2d 144. "Probative value is enhanced by the absence of any other evidence that can prove the same point." Covell, supra, 157 N.J. at 569, 725 A.2d 675. In addition, evidence of motive or intent "require[s] a very strong showing of prejudice to justify exclusion." Id. at 570, 725 A.2d 675.
As I noted previously, to prove the tender-years sexual assaults against defendant, the State had to prove that defendant touched one or more of L.V.'s intimate parts for one of four purposes: "either degrading or humiliating [L.V.], or sexually arousing or sexually gratifying the defendant-actor." Zeidell, supra, 154 N.J. at 428, 713 A.2d 401. The trial court informed the jury that although defendant denied touching his daughter in a sexual way, the State nonetheless had to prove that defendant not only touched L.V.'s intimate parts, but also that his intention or motive was for his sexual gratification. Without proof of defendant's intention or motive, the jury could have concluded that the touching was accidental or was consistent with fatherly touchings as opposed to sexual gratification. Without L.J.V.'s testimony that defendant also touched her intimate parts when she was about the same age as L.V., the State would have been without those essential proofs.
I am persuaded that because the State could not produce a sufficient quantity of quality less-inflammatory evidence regarding defendant's motive or intention, a genuinely disputed fact in the case, the probative value of the other-crime evidence is enhanced. For two years before the penetrations began, the State alleged that defendant committed sexual assaults upon L.V. Therefore, when L.V. was between the ages of six and eight, there was no penetration from which intent or motive could be inferred. The threats to harm L.V., her family and pets were made, and the Peterson episode occurred, after the penetrations began and cannot be used to infer intent during the prior two years. Although L.V. testified that defendant assaulted her over a period of time, defendant attacked her credibility and asserted a vendetta defense. Consequently, the trial court did not abuse its discretion when it determined that the showing of prejudice had not risen to the level that required exclusion of the other-crime evidence regarding defendant's motive or intention.
The trial court made a discretionary ruling. This is a case in which reasonable minds might differ concerning whether to admit the other-crime evidence. When "reasonable minds can and [do] differ about [a N.J.R.E. 404(b)] decision to admit other-crime evidence based on the probative-prejudicial balancing test," State v. Stevens, supra, 115 N.J. at 303, 558 A.2d 833, our law requires that the trial court's ruling be accorded deference. Marrero, *152 supra, 148 N.J. at 483, 691 A.2d 293. Because I find that the trial court's decision regarding the admissibility of the other-crime evidence was determined after making a proper contextual evaluation of the probative and prejudicial impact of that evidence, I conclude that the fourth prong of the Cofield test was satisfied regarding the charge of sexual assault.

IV.
In view of my conclusion that the trial court properly admitted other-crime evidence that was relevant to defendant's intent and motive when he had sexual contact with L.V. regarding the sexual assault charges, I must now determine whether the trial court's jury instruction limiting the use of that evidence constitutes plain error. The court was obligated to properly instruct the jury and "`to explain precisely the permitted and prohibited purposes of the evidence, with sufficient reference to the factual context of the case to enable the jury to comprehend and appreciate the fine distinction to which it is required to adhere.'" Cofield, supra, 127 N.J. at 341, 605 A.2d 230 (citation omitted).
Regarding the sexual assault charge, the trial court explained both how that evidence could and could not be used as follows:
Now, ladies and gentlemen, you heard testimony from [L.J.V.] that she was sexually assaulted by the defendant between 1975 and 1979. As you know, [G.V.] is not on trial for this offense. And normally our Rules of Evidence would prohibit such evidence. This evidence was submitted to you for a very limited purpose which I will explain shortly. First let me tell you what the evidence was not submitted for and how you cannot use it.
This evidence was not submitted to you to show that the defendant is a bad person or has a disposition which shows he is likely to have committed the crimes which he is charged in this indictment for. Similarly, this evidence was not submitted to you to show a general disposition of the defendant to commit bad acts. This is not the purpose of allowing such testimony and it should not be considered by you as such.
The Rules of Evidence do, however, permit such testimony where such evidence relates to some other fact in issue in the case, such as the absence of mistake or accident in the touching, or the intent of the defendant in the touching. Here the evidence was admitted as it may bear on the issue of whether the alleged touching of [L.V.] was accidental or by mistake.
Likewise, it may also bear on the defendant's motive for allegedly touching or performing sexual [intercourse] upon [L.V.], that is, to obtain some sort of sexual gratification. Or on the issue of his intention to touch her or to have intercourse with her.
Whether or not such testimony does or does not in fact bear on those issues in this case is for you and you alone to decide. If you decide that such testimony was not credible or does not bear on any of those issues in this case, you should disregard the testimony as not being helpful to you. If you find the testimony to be credible and bearing on one or more of those issues I just mentioned, you may consider the testimony in that respect. It is for you and you alone to decide how to use that testimony in that framework.
Thus, the jury charge included both the anti-propensity instruction and an instruction that the evidence could not be used to conclude that defendant was a bad person, while also informing the jury that the evidence could be used to show motive, intent, or lack of accident or mistake regarding the sexual assault.
There was still another purpose for which the jury could have used the other-crime evidence. That additional purpose was undoubtedly overlooked because the *153 trial court conducted the N.J.R.E. 104 hearing and made its ruling regarding other-crime evidence prior to trial. The court did not know at that time that defendant intended to offer a vendetta defense, claiming that L.V. and L.J.V. were out to get him because he had separated from their mother and had a girlfriend. The trial court was never asked, and therefore never decided, whether L.J.V.'s testimony was admissible to rebut the vendetta defense.
In State v. G.S., supra, 145 N.J. at 475, 678 A.2d 1092, this Court held that other-crime or bad-conduct evidence is admissible to rebut a vendetta defense. There, defendant asserted that his teenage stepdaughter had manufactured stories of molestation in an effort to have him removed from the house. Ibid. The other-crime evidence was admitted to demonstrate that the victim's mother had not believed the victim when she asserted that G.S. had sexually assaulted her before. The fact that G.S. involved a prior crime with the same victim and the present case involves two sisters is not a distinction that should preclude application of the same rule of law. Oliver, supra, 133 N.J. at 153, 627 A.2d 144, held that other-crime evidence was admissible to prove the feasibility of the defendant committing a sexual assault while other people were in the home and the defendant's use of pretext to lure victims into his room. Thus, both G.S. and Oliver are cases in which other-crime evidence was used for purposes other than those enumerated in N.J.R.E. 404(b). I conclude, therefore, that L.J.V.'s testimony was admissible on the issues of L.V.'s credibility and whether there was a vendetta against defendant. Two members in the majority agree that the other-crime evidence can be used to rebut a vendetta defense in a retrial. Infra at 278-79, 744 A.2d at 152-53. Justice Long's opinion, arguing for the exclusion of the evidence on retrial, does not discuss State v. G.S. or State v. Oliver.
Finally, I must address whether the trial court's instruction that permitted the jury to use the other-crime evidence for an irrelevant purpose under the aggravated sexual assault charge resulted in prejudice to defendant. The issue arises as plain error because there was no objection to the court's jury instruction regarding the use of other-crime evidence. R. 2:10-2; R. 1:7-2. Plain error requires a reversal if it is "clearly capable of producing an unjust result." R. 2:10-2. "[T]he test to apply is whether the possibility of injustice is `sufficient to raise a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached.'" State v. G.S., supra, 145 N.J. at 473, 678 A.2d 1092 (quoting State v. Macon, 57 N.J. 325, 336, 273 A.2d 1 (1971)). In other words, the error complained of must have the clear capacity to bring about an unjust result. State v. Jordan, 147 N.J. 409, 422, 688 A.2d 97 (1997).
My examination of the record persuades me that the jury charge that permitted the use of the other-crime evidence to show intent or motive for having sexual intercourse with L.V. did not create a real possibility that the jury reached the wrong result or significantly added to the likelihood that defendant would be found guilty of aggravated sexual assault. Motive, intent, and sexual gratification were not relevant to that charge. The jury also was instructed that it should disregard the other-crime evidence if it found the evidence was not probative of defendant's intent or motive for touching L.V. or having sexual intercourse with her. If the jury believed that defendant had sexual intercourse with his eight-year-old daughter, the evidence of guilt was overwhelming. There was no claim that the alleged sexual intercourse was not knowing. I am satisfied, therefore, that the instruction that permitted the jury to consider the other-crime evidence regarding intent, motive, mistake, accident or sexual gratification under the aggravated sexual assault charge was harmless.
*154 There is an additional reason why the erroneous jury instruction was harmless error. As I stated previously, and two members in the majority agree, infra at 278-79, 744 A.2d at 152-53, the other-crime evidence was relevant to rebut the vendetta defense. Because that evidence was admissible for that purpose, the fact that the jury was not instructed that it could be used for that additional purpose did not prejudice defendant. The jury was instructed that the other-crime evidence could not be used to show defendant is a bad person or has the predisposition to commit crimes in general or the crimes charged in the indictment. That instruction sufficiently precluded the jury from misusing that evidence. If anything, the lack of such an instruction benefitted defendant because the jury was not informed that the evidence could be used in another way to assist the State with its burden of proof. Because the other-crime evidence would be admissible to rebut the vendetta defense in the event of a new trial, see R.S. v. Knighton, 125 N.J. 79, 97, 592 A.2d 1157 (1991) (suggesting a new trial should not be ordered if the same evidence would be admissible on retrial); State v. Bethune, 121 N.J. 137, 146, 578 A.2d 364 (1990) (same), the erroneous jury instruction that permitted L.J.V.'s testimony to be used to determine defendant's motive, intent, and purpose for having sexual intercourse with his eight-year-old daughter lacked the capacity to bring about an unjust verdict.
I would reverse the judgment of the Appellate Division and remand the case to that court to decide the other issues raised that have not been decided. Because the majority has ordered a new trial, I concur with Justices O'Hern and Stein that the other-crime evidence is admissible in a new trial to rebut a vendetta defense, if raised.
Justices GARIBALDI and VERNIERO join in this opinion.
For affirmance and remandment Chief Justice PORITZ and Justices O'HERN, STEIN and LONG4.
For reversal and remandmentJustices GARIBALDI, COLEMAN and VERNIERO3.