97 N.J. Super. 428 (1967)
235 A.2d 231
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
ROGER L. BURGESS, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 16, 1967.
Decided November 6, 1967.
*431 Before Judges KILKENNY, CARTON and MOUNTAIN.
Mr. Dimitry G. Nicola argued the cause for appellant.
Mr. Lawrence S. Schwartz, Assistant County Prosecutor, argued the cause for respondent (Mr. Brendan T. Byrne, County Prosecutor of Essex County, attorney; Mr. James R. Zazzali, of counsel and on the brief).
The opinion of the court was delivered by CARTON, J.A.D.
Defendant was convicted by a jury of conspiring to obtain money by false pretenses N.J.S. 2A:98-1. He seeks a reversal on the grounds that the indictment under which he was charged was fatally defective and that certain other errors were committed by the trial judge.
The indictment charged that defendant Burgess and another defendant (Mansueto) conspired with Solomon and Coleman (who were not named as co-defendants) to commit the crime of obtaining money by false pretenses N.J.S. 2A:111-1.
The overt acts detailed in the indictment allege that defendant gave a bad check in the amount of $73.05 to Solomon on April 15, 1965 and that Solomon cashed it and gave some of the proceeds to defendant. Further, on July 23, 1965 defendant and Mansueto allegedly drafted another bad check in the amount of $93.45 and then gave it to Coleman, who cashed it and divided the proceeds with Mansueto.
Mansueto pleaded guilty to the indictment. Thus, trial on the charge of conspiracy proceeded against defendant Burgess alone. Solomon testified on behalf of the State. He stated that he knew defendant Burgess and that he had received from him the $73.05 check in April 1965. They made an arrangement whereby Solomon would cash the check and give defendant $10 or $15 out of the proceeds. Several days later, Solomon cashed the check at Wee Willie's Tavern and thereafter gave defendant $10 or $11.
*432 Coleman testified on behalf of the State. He outlined the circumstances surrounding the cashing of a second check on July 23, 1965. Coleman, accompanied by Leon Knight, saw defendant on the street and the latter introduced him to Mansueto, who was with defendant. Mansueto asked Coleman if he would like to cash some checks and the latter said that he would. Defendant Burgess was standing "on the side," some seven feet away. The four men drove off in Mansueto's car to Coleman's home to pick up identification cards in the name of Joseph Hernandez which Coleman had found. Mansueto examined the identification, pulled out a check from under the seat cover of the car, and filled it out with the name "Joseph Hernandez." Driving to a nearby supermarket, Coleman cashed the check, obtaining $93.45 in proceeds which he handed over to Mansueto in the car. The latter then gave Coleman $20.
Mansueto corroborated Coleman's testimony generally. He also stated that he and Burgess had gotten blank checks "off of some fellow" and were keeping them under the seat cover of the car, and that he and Burgess had made plans to cash the checks because they needed money.
Also produced as witnesses by the State were Mr. Fitten and Mr. Cohen who testified that the $73.05 and $93.45 checks respectively were not authorized checks on their accounts. There was testimony from the persons who had paid the checks and from the officer who investigated the passing of the two checks and arrested Solomon, Coleman and Burgess.
Defendant's motion at the end of the case to dismiss the indictment on the ground that the State had failed to make out a prima facie case was denied. He thereupon took the stand on his own behalf and denied any participation in the transactions. On cross-examination, he admitted a record of several previous convictions for various crimes.
Defendant argues that he was prejudiced by the joinder of two conspiracies in the same count of the indictment; that each conspiracy was separate and distinct in *433 time and purpose, and that there was no showing the two conspiracies were part of a common scheme, the only relationship between the two transactions being defendant's participation in each. The record supports defendant's contention that two separate charges of conspiracy are made in the indictment. Properly they should have been charged in two separate counts, rather than as a single count. See R.R. 3:4-7; State v. Torrance, 41 N.J. Super. 445, 452 (App. Div. 1956), certification denied, 23 N.J. 59 (1956). Further, it is evident that what happened on April 15, 1965 in the check-passing episode between defendant and Solomon was in no way related to the July incident in which defendant, Coleman and Mansueto were involved.
However, defendant made no motion before trial to object to the joinder of the two offenses charged in the indictment. The rules require that an objection to such a defect must be raised by a motion before trial, and failure to do so constitutes a waiver of the defect. R.R. 3:5-5(b) (2). Nor was there any objection to the proofs which showed two conspiracies rather than a single offense. Likewise, no motion was made to strike either of the conspiracies or the proof relating thereto before summation of the case to the jury.
Thus, the question is whether there was plain error committed by the trial court in allowing the proofs of the two conspiracies to be submitted to the jury when only one conspiracy was charged in the indictment. The inquiry is whether the variance between the offense charged in the indictment and the proof adduced at trial substantially affected the rights of defendant by hindering the preparation of his defense or by subjecting him to another prosecution for the same offense. Berger v. United States, 295 U.S. 78, 81-82, 55 S.Ct. 629, 79 L.Ed. 1314, 1317-1318 (1935).
In Berger, as in the case before us, two conspiracies had been proved although only one had been charged in the indictment. We note, however, that Berger, unlike defendant herein, was involved in only one of the illegal transactions. *434 The court was concerned with a transference of guilt across the lines of the separate conspiracies and the consequent prejudice to Berger. Notwithstanding such a possibility, the Supreme Court concluded that the multiple trial and joinder of the conspiracies had not been prejudicial.
Defendant relies upon Kotteakos v. United States, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946), in which the Supreme Court reversed the convictions of several defendants on the ground that a material variance between the charge of one conspiracy in the indictment and the proof of eight or more conspiracies at trial was prejudicial. However, the court, recognizing the continuing validity of Berger, distinguished that case from the situation before it, saying:
"The sheer difference in numbers, both of defendants and of conspiracies proven, distinguishes the situation. Obviously the burden of defense to a defendant, connected with one or a few of so many distinct transactions, is vastly different not only in preparation for trial, but also in looking out for and securing safeguard against evidence affecting other defendants to prevent its transference. * * *." (328 U.S., at pp. 766-767, 66 S.Ct. 1249, 90 L.Ed. at pp. 1567-1568)
Thus, in Kotteakos, as in Berger, the issue was prejudice to one not involved in all the conspiracies proved. In this case, the absence of prejudice is even more clear. Defendant was tried alone and defendant had participated in both conspiracies. Transference of the guilt of another was consequently impossible.
We are satisfied that the evidence fully justified the jury's finding that defendant was guilty of conspiracy and, under the circumstances, that no prejudice has been shown so as to constitute plain error.
We perceive no substance to the other claims of error advanced by defendant. The indictment was clearly adequate and contained sufficient particulars to inform him fully of the offense being charged. It actually sets forth the details of the offense with considerable particularity. Furthermore, *435 had defendant felt that the charge was not sufficiently specific to enable him to prepare a defense, he could have applied for a bill of particulars. R.R. 3:4-6. He made no such application.
Defendant's claims that he was prejudiced by the court's ruling as to the admissibility of evidence are unfounded. In the first place, there was no objection made to the admissibility of the evidence which he now claims was erroneously permitted. Nor was there error in the admission of the testimony of the witness Solomon solely because he was a co-conspirator. A defendant may be properly convicted even on the uncorroborated testimony of another conspirator despite the fact that the co-conspirator was a user of drugs and had a previous criminal record. The issue before the jury was one of credibility and it was up to the jury to determine what weight should be attributed to it. Furthermore, there was other corroborating evidence which the jury could consider in the determination of defendant's guilt.
Finally, the claim that evidence of a defendant's prior criminal record should not be admitted because of remoteness or its inherent tendency to create prejudice has been resolved contrary to this contention. State v. Hawthorne, 49 N.J. 130 (1967).
Affirmed.