Carroll
No. 90-567

THE STATE OF NEW HAMPSHIRE

v.

PAUL MICHAUD

July 10, 1992

*John P. Arnold*, attorney general (*Geoffrey J. Ransom*, attorney, on the brief and orally), for the State.

*Schroeder, McLetchie & Clough*, of Ossipee (*Erland C.L. McLetchie* on the brief and orally), for the defendant.

JOHNSON, J.   The defendant, Paul Michaud, was convicted by a jury of second degree assault for knowingly causing serious bodily harm to an infant boy in violation of RSA 631:2 (1986) (current version at RSA 631:2 (Supp. 1991)). On appeal, he contends that (1) the Superior Court (*Mohl*, J.) improperly admitted prior bad act evidence under New Hampshire Rule of Evidence 404(b); (2) the evidence presented at trial was insufficient to prove that he had the required *mens rea* to violate RSA 631:2 (1986); and (3) the trial court improperly denied his motion for a new trial based on jury misconduct. We reverse based on the defendant's first claim. Thus, we need not reach the second and third claims.

On May 26, 1988, the defendant was babysitting Gregory Turcotte, the infant son of his girlfriend, Kathy Turcotte. The defendant allegedly became frustrated with Gregory and shook him until he went into convulsions. Concerned for the child's condition, the defendant

immediately called the local fire department. Gregory was airlifted to the Massachusetts General Hospital in Boston, where physicians treated his convulsions. The physicians additionally discovered that Gregory had a fractured leg which, because of bone formation over the fracture site, they diagnosed as approximately two weeks old.

The defendant filed a motion in limine seeking to bar the State from introducing evidence that the defendant intentionally fractured Gregory's leg approximately two weeks prior to the shaking incident. The trial court held an evidentiary hearing at which the State attempted to show that the defendant intentionally fractured Gregory's leg, and that such evidence was relevant to whether he intentionally injured Gregory on May 26. The State's offers of proof are reproduced in relevant part below:

"THE COURT: I would ask that maybe the State respond initially to the motion, and address in particular what evidence there is to link [the leg] injury to the defendant in this case.

[THE STATE]: Well, the testimony will be . . . that the child was seen by its pediatrician on . . . May 13, at which time he was given a DPT shot and examined; that the child gave no evidence of any injury at that time. Either the night of the 13th or during the day of the 14th . . . the defendant and [Kathy Turcotte] and the child stopped at [Kathy's] mother's house. [Kathy Turcotte] went into her mother's . . . house for about 20 minutes to half an hour, according to her best recollection, to which she will testify that when she came out, the child was screaming and, thereafter, the child exhibited tenderness in that leg when she would put diapers on it and stuff. She did not really feel that there was an injury, though she was aware that the child was uncomfortable. After the [convulsions] incident of the 26th, which is the subject of the charge, the child was taken to Huggins Hospital, and then air-[vacated] to Mass. General, where X rays were taken . . . and the fracture of the tibia showed up. . . .

THE COURT:    Okay. Can you tell me what the medical evidence will say is necessary for this type of an injury to occur? Do you know?

[THE STATE]:    Well, the medical evidence . . . will be that it takes a fair amount of twisting force to have occurred for such an injury to occur, that . . . since the child is not walking at this time, it's almost an injury that never occurs, except when there's deliberate force applied; that the child exhibited, on the 28th when examined, bruises on the lower left leg, and bruises on the right leg, bruises on the left arm. Those bruises are brown, tan and yellow, and [we] will have evidence as to the age of the bruises.

We will enter evidence as to the fact that [the defendant], over [a] period[] of time . . . [exhibited] a degree of frustration with the child's crying, and . . . got upset with the child.

THE COURT:    So it's fair to say that your evidence of the defendant's commission of the act, which resulted in the leg fracture, is circumstantial?

[THE STATE]:    It's circumstantial. He was in the sole control of the child at the time. The mother will testify that during the time she was in control of the child, nothing occurred that would have created that kind of damage, that it was a situation where it's *more probable than not* that defendant caused that injury . . . ."

(Emphasis added.) The only other significant proffer made by the State was that, aside from the defendant, only Kathy Turcotte and one Jack Kratz had been with Gregory between May 13 and May 26. The State assured the court that both would testify that they did not injure the child.

The defendant challenged several of the State's proffers. After hearing both arguments, the trial court ruled that evidence regarding Gregory's fractured leg would be admitted into evidence:

"I think this is a close case, and it's close not because . . . there's any question of relevance. . . . I'm concerned as to whether or not there is adequate proof that in fact the acts were committed by the defendant. Based on the offer of proof that I have from the State as to what the evidence will be, I'm satisfied that that evidence is clear and the jury could find that the defendant com[m]itted those acts [and that the probative value of the evidence will outweigh its prejudicial impact]."

■■  On appeal, the defendant contends that the trial court violated New Hampshire Rule of Evidence 404(b) in admitting evidence regarding the fractured leg. Rule 404(b) provides:

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

Before admitting evidence of prior bad acts under Rule 404(b), the trial court must determine that (1) the evidence is relevant for a purpose other than to prove character or disposition; (2) there is clear proof that the defendant committed the prior offense; and (3) the prejudice to the defendant does not substantially outweigh the probative value of the evidence. *State v. Simonds*, 135 N.H. 203, 206, 600 A.2d 928, 930 (1991). Rule 404(b) determinations lie within the trial court's sound discretion. *Id.*; State v. Trainor, 130 N.H. 371, 374, 540 A.2d 1236, 1238 (1988). Thus, we will not reverse the trial court's findings on appeal unless the defendant establishes that they were "clearly untenable or unreasonable to the prejudice of his case . . . ." *State v. Whitney*, 125 N.H. 636, 639, 484 A.2d 1158, 1160 (1984).

■  The defendant primarily argues that the trial court erred in finding "clear proof" that the defendant intentionally fractured Gregory's leg. We have previously affirmed "clear proof" determinations where the State provided the trial court with evidence firmly establishing that the defendant, and not some other person, committed the prior bad act. *See Simonds*, 135 N.H. at 208, 600 A.2d at 931 (State proffered that victim would testify that defendant had sexually assaulted her on prior occasions); *State v. Tarsitano*, 134 N.H. 730, 734–35, 599 A.2d 474, 476–77 (1991) (defendant's friend testified that he participated in burglaries with the defendant); *State v.*

*Dalphond*, 133 N.H. 827, 831, 585 A.2d 317, 320 (1991) (victim, who was member of defendant's household, described contents of pornographic material owned by the defendant); *State v. Gruber*, 132 N.H. 83, 89, 562 A.2d 156, 159–60 (1989) (State introduced cancelled checks, receipts, and telephone records to prove that defendant had engaged in prior bad acts); *Trainor*, 130 N.H. at 374, 540 A.2d at 1238 (police officer "chronicled the events surrounding [a prior] indictment and linked the defendant to them"); *State v. Barker*, 117 N.H. 543, 545–46, 374 A.2d 1179, 1180 (1977) (police officer testified that defendant had previously engaged in drug transactions).

■ In light of the foregoing, we hold that the State's proffer in this case was inadequate to prove convincingly that Gregory's fractured leg was not caused by someone other than the defendant. As the State admitted during the evidentiary hearing, its proffer merely established that it was "more probable than not that [the] defendant caused [the] injury." First, the fact that Kathy Turcotte and Jack Kratz would testify that they did not injure Gregory was no more reliable than the defendant's assertion that he did not injure Gregory. If, as the State claims, the leg injury could only have been caused by intentional force, then it is unlikely that anyone would admit to causing the injury. Such an admission would invoke criminal liability. Second, the significance of Gregory's "screaming" when Kathy Turcotte returned to her car on May 13 is undermined by her subsequent failure to take any actions indicating that she suspected Gregory was injured. Finally, the fact that Gregory "exhibited tenderness in his leg" does not in any way tie the defendant to the injury. Gregory would have "exhibited tenderness" regardless of who injured his leg. Because the State did not establish that the defendant, and not some other person, broke Gregory's leg, the trial court's finding of "clear proof" under Rule 404(b) was "clearly untenable or unreasonable to the prejudice of [the defendant's] case . . . ." *Whitney*, 125 N.H. at 639, 484 A.2d at 1160.

■ The trial court's error was not harmless. Evidence of prior bad acts is inherently prejudicial and carries substantial weight with the jury. *State v. Hickey*, 129 N.H. 53, 62, 523 A.2d 60, 66 (1986). Because the mental state required to intentionally break an infant's leg is similar to the mental state required to intentionally shake an infant to the point of convulsions, it is very possible that the jury looked to the prior bad act to find intent. Thus, we cannot say "beyond a reasonable doubt that the inadmissible evidence did not affect the verdict." *State v. Woodbury*, 124 N.H. 218, 221, 469 A.2d 1302, 1305 (1983) (quotation omitted).

Finally, we note that the trial court's jury instruction, which permitted the jury to find that the defendant did not fracture Gregory's leg, was insufficient to save this case from reversal. Under Rule 404(b), the trial court, not the jury, must determine whether adequate proof exists to admit prior bad act evidence. *See* N.H. R. Ev. 104(a) ("Preliminary questions concerning . . . the admissibility of evidence shall be determined by the court . . . ."); *State v. Berube,* 123 N.H. 771, 776, 465 A.2d 509, 513 (1983) ("[T]he admissibility of evidence is a question of law for the trial judge, rather than a question of fact for the jury."). By placing this responsibility on the jury, the trial court runs the risk of creating a "trial within a trial" and usurping the important screening function of the trial court in a Rule 404(b) evidentiary hearing.

*Reversed and remanded.*

All concurred.