784 A.2d 1225

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v. DAVID HERNANDEZ, DEFENDANT–RESPONDENT.

Argued September 10, 2001—Decided November 21, 2001.

*Marc A. Festa,* Assistant Prosecutor, argued the cause for appellant (*Boris Moczula,* Acting Passaic County Prosecutor, at-

torney; *Michelle Katich*, Assistant Prosecutor, of counsel and on the briefs).

*Edward T. Ehler*, argued the cause for respondent.

*Bennett A. Barlyn*, Deputy Attorney General, argued the cause for *amicus curiae* Attorney General of New Jersey, (*John J. Farmer, Jr.*, Attorney General, attorney).

*Lawrence S. Lustberg*, argued the cause for *amicus curiae* Association of Criminal Defense Lawyers of New Jersey (*Gibbons, Del Deo, Dolan, Griffinger & Vecchione*, attorneys; *Mr. Lustberg* and *Risa E. Kaufman*, on the brief).

The opinion of the Court was written by

LaVECCHIA, J.

This appeal presents an opportunity for the Court to consider whether uncorroborated, "other-crimes" testimony provided by a co-defendant cooperating with the prosecution should be banned *per se* because it cannot satisfy the "clear and convincing" standard of proof required for the admission of other-crime evidence. Prior to trial, defendant David Hernandez sought to limit the testimony of George Gerardi, who, although indicted with defendant for certain drug offenses, agreed to give testimony against defendant in exchange for a more lenient sentence. Defendant sought to exclude Gerardi's testimony concerning the business relationship between the two men in the two months preceding defendant's arrest. The trial court admitted the testimony, and ultimately, the jury convicted defendant.

The Appellate Division reversed and remanded for a new trial. *State v. Hernandez*, 334 *N.J.Super.* 264, 274, 758 *A.*2d 1139 (2000). The panel held that Gerardi's uncorroborated testimony could not satisfy the clear and convincing standard of proof that is a prerequisite to the admission of other-crime evidence under *State v. Cofield*, 127 *N.J.* 328, 605 *A.*2d 230 (1992):

> We are satisfied, however, that the uncorroborated testimony of a co-defendant testifying against defendant pursuant to a favorable plea agreement, and particu-

larly the testimony of this co-defendant, falls so far short of clear and convincing evidence as to mandate the exclusion of his other-crimes evidence.

[*State v. Hernandez, supra,* 334 *N.J.Super.* at 271, 758 *A.*2d 1139.]

We granted certification, 167 *N.J.* 88, 769 *A.*2d 1051 (2001). Although it is not clear that the Appellate Division adopted a *per se* exclusionary rule concerning accomplice testimony in respect of other crimes, the issue is squarely presented and in our view should be addressed. We now reject the application of a *per se* rule excluding other-crime evidence provided through the uncorroborated testimony of a co-defendant cooperating with the prosecution. Nonetheless, we affirm the Appellate Division's reversal and remand for a new trial because of the unduly prejudicial nature of a portion of Gerardi's testimony, and because the limiting instruction was inadequate to counsel the jury appropriately on the permissible uses of Gerardi's other-crime testimony.

I.

Defendant and Gerardi were indicted on charges of possession of a controlled dangerous substance (crack-cocaine), contrary to *N.J.S.A.* 2C:35–10a(1) (Count One); possession with intent to distribute, contrary to *N.J.S.A.* 2C:35–5a(1) and b(3) (Count Two); and possession with intent to distribute within 1,000 feet of school property, contrary to *N.J.S.A.* 2C:35–7 and 2C:35–5a (Count Three). Gerardi was given a favorable plea bargain on his agreement to testify for the State at defendant's trial. At a pre-trial hearing, defense counsel moved to exclude Gerardi's testimony concerning the alleged details of his business relationship with defendant during the two months that preceded their arrest on February 11, 1997. The assistant prosecutor represented Gerardi's testimony at the pretrial hearing as follows:

Now, Mr. Gerardi also said that he would testify as to his relationship, his prior relationship, with Mr. Hernandez; that they had known each other in school; that on 12/12/96, December 12th of 1996 when Mr. Gerardi got out of prison, he went looking for Mr. Hernandez knowing that he could make money with him selling for him and, in fact, that's what he began to do at that time and that's when the business relationship was started where he got 30 dollars for every hundred dollars in sales and also the way this was done exclusively was that Mr. Gerardi would

always hand the money over to Mr. Hernandez and Mr. Gerardi would always hold the crack, reason being Mr. Hernandez if they were arrested wouldn't have any drugs on him.

Also that Mr. Gerardi said that he had—he was aware that Mr. Hernandez went into he said around 140th Street in New York or in Manhattan to buy crack. He had actually gone with him on one run in this period sometime between 12/12/96 and 2/11/97.

Defense counsel objected to that testimony noting that there was no conspiracy count in the complaint and no counts concerning any action other than the events that occurred on February 11, 1997. Accordingly, he asserted that the proffered testimony was more prejudicial to defendant than it was probative of the events that took place on the day of arrest. The trial court disagreed, stating:

THE COURT: Doesn't the Prosecutor—I mean you don't—it won't necessarily be very unusual for somebody to meet somebody on the street and say do you want to start dealing drugs with me.

There's almost always some kind of prior relationship and these things allegedly—and these are all allegations, this is entirely up to the jury, but two people don't allegedly start dealing together on [sic] a vacuum on that day. There has to be some type of prior coming together, normally.

How does the Prosecutor explain their association; why one trusts one another, et cetera, if he can't go into some sort of background? I don't know how he's to present his case, that day, we were doing this and, before this, it was our arrangement, this is what he paid me. I would be asking him to try his case in a two-by-four vacuum.

[Defense counsel]: I don't agree with that, but I respect your Honor's statement. If we're going to deal with that, I would ask for a hearing outside the presence of the jury

. . . .

The following facts were adduced at trial. Officer Henry Morales testified that he and his partner set up a surveillance of the corner of River Street and Sixth Avenue in the City of Paterson on February 11, 1997. The area was known for its high incidence of drug trafficking. The surveillance vantage point was an elevated position within twenty feet of a pool hall that was the focus of the surveillance. Officer Morales observed a woman, later identified as Martha Sanchez, approach defendant and Gerardi. Both were standing in front of the pool hall. Officer Morales saw Sanchez hand paper currency to Gerardi while defendant, who was

paying attention to what was transpiring, stood a few feet away. The officer observed defendant and Gerardi engage in conversation before Gerardi pulled a paper bag from the right sleeve of his jacket and removed an object from the bag. He handed the object to Sanchez. Officer Morales then observed Gerardi hand the paper currency to defendant. Following that transaction, Officer Morales and his partner arrested Gerardi and defendant. A search revealed that Gerardi had in his possession a paper bag containing eleven baggies filled with suspected crack-cocaine. He also possessed a glassine envelope containing suspected heroin. A search of defendant produced a total of $363 in cash in denominations of twenty dollar bills or smaller.

Gerardi testified next. He stated that a few days after he was released from Yardville Youth Correctional Facility on December 12, 1996, he ran into defendant, a long-time acquaintance. During their brief exchange, defendant asked whether Gerardi was interested in "making a little money here and there." Gerardi understood that to mean selling drugs and agreed. He testified that he began selling crack-cocaine for defendant sometime around the 1996 Christmas holidays. The arrangements were that for every twenty baggies he would sell for $5 per bag, defendant would pay him $30. Gerardi testified that he sold crack-cocaine for defendant on approximately twenty occasions between December of 1996 and February 11, 1997, when he was arrested. He stated that defendant would remain in close proximity while Gerardi would make a sale because defendant did not trust him with the sale proceeds. Gerardi had once used drug sale proceeds to purchase heroin for his personal habit. Gerardi also testified that it was his understanding that defendant purchased his drugs in New York City. On one occasion between the end of December 1996 and February 11, 1997, he accompanied defendant to New York where defendant purchased a block of crack cocaine for between $300 and $400.

Gerardi testified that on February 11, 1997, he met defendant on River Street some time between 6:00 and 6:30 p.m. Defendant

asked him if he was "alright," which Gerardi understood as an inquiry concerning whether he needed heroin before beginning to sell for defendant. After he told defendant he needed a bag of heroin, defendant gave him $10, told him to "get straight," and that when he returned he could sell the crack-cocaine. Gerardi left the area and purchased a bag of heroin. He then returned to River Street to rejoin defendant. At 6:45 p.m. a police car pulled along the sidewalk where Gerardi was standing and the officer instructed him to leave the corner. Gerardi complied, but returned once the police left the area. He and defendant then went into a nearby restaurant on River Street, and while they were waiting for the food defendant had ordered, defendant handed Gerardi a plastic bag containing approximately twenty-five baggies filled with crack-cocaine. Gerardi placed the plastic bag into a paper bag and then put the bag into the right sleeve of his jacket.

Gerardi exited the restaurant to sell the drugs. Defendant followed him outside and sat in a nearby doorway. A man approached Gerardi and inquired whether he could purchase nine bags for $40. Gerardi explained that this was known as a "play" or discount, and because he was not authorized to "give play," he consulted defendant who authorized the sale. Gerardi remained outside the restaurant and engaged in a few more transactions, immediately giving all proceeds to defendant after each sale. The two then returned to the restaurant. Gerardi testified that he had to eat before he could take the heroin he had purchased earlier.

Once they finished eating, Gerardi and defendant returned to the sidewalk on River Street. Gerardi stood directly in front of the pool hall located at 591 River Street and defendant stood approximately ten feet away. Gerardi was approached by a woman he knew by the name of "Candy Sanchez." Sanchez wanted to purchase three baggies for $13. Unauthorized to make the sale without defendant's approval, Gerardi told Sanchez to ask defendant. Sanchez then called over to defendant to ask whether he would agree to the "play." Defendant, speaking directly to

Sanchez, agreed to the sale. Gerardi gave three bags of crack to Sanchez after she handed him $13. He then handed the money to defendant. Immediately after that transaction, police arrested both Gerardi and defendant.

On direct examination, Gerardi testified that while he was in jail awaiting trial, defendant offered to pay him between $50 and $100 per week for the entire period of his incarceration if Gerardi would testify that defendant had no involvement in the drug transaction and that the drugs and money belonged solely to Gerardi. He asked Gerardi to testify that when Gerardi handed the money to defendant it was because defendant owed him money. Gerardi agreed to defendant's terms. However, when a few weeks went by and defendant, who was out on bail, did not pay the promised money, Gerardi decided against "taking the weight" for defendant. He subsequently entered into a plea agreement that was conditioned on his cooperation with the State in the criminal case against defendant.

As might be expected, defense counsel engaged in a withering cross-examination of Gerardi designed to attack his character. Defendant never testified, but the defense theory was that defendant had nothing to do with Gerardi's drug sale on February 11, 1997. According to that theory, Gerardi handed defendant cash on February 11, 1997, because he owed defendant money. Nonetheless, the jury convicted defendant of Counts Two and Three, the possession with intent to distribute charges. The jury acquitted defendant on Count One, simple possession. The trial court refused to mold the verdict to dismiss Counts Two and Three on the basis of an inconsistent verdict, and sentenced defendant to eight years with a four-year period of parole ineligibility.

On appeal, the Appellate Division reversed the conviction and remanded for a new trial. The panel stated that it need not decide the first prong of the *Cofield* analysis, that is, whether Gerardi's testimony was probative of a fact in issue that was directly involved in the proof of the crime, although it expressed some doubt on the subject. The panel concluded that the other-

crime evidence presented through Gerardi's testimony was incapable of meeting the clear and convincing standard of proof required under the third prong of *Cofield* because it was "uncorroborated testimony of a co-defendant testifying against [the] defendant pursuant to a favorable plea agreement." *State v. Hernandez, supra,* 334 *N.J.Super.* at 271, 758 *A.*2d 1139.

The Appellate Division, however, went on to address the specifics of Gerardi's testimony. Noting that Gerardi "admitted that he lies under oath with impunity," felt "hostility to defendant," and testified against defendant as a "required term of the lenient plea bargain" he had struck, the court concluded that Gerardi's testimony fell far short of the clear and convincing standard. *Id.* at 272, 758 *A.*2d 1139. Arguably, then, the Appellate Division was not adopting a *per se* rule, but deciding the case on the facts before it and on its view of the credibility of Gerardi's testimony. The State and the Attorney General, however, claim that the court adopted a *per se* rule and urge us to address the propriety of such a rule. The parties and *amicus curiae* have briefed thoroughly the question whether this Court should adopt a *per se* exclusionary rule when uncorroborated other-crime testimony is offered by a cooperating co-defendant. We will therefore address both that question and, because we reject a *per se* rule, the application of *Cofield* to the specific evidence in the record before us.

## II.

New Jersey Rule of Evidence 404(b) excludes evidence of an accused's other crimes or acts offered for purposes of showing the propensity of the person to commit a crime. *N.J.R.E.* 404(b) states:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the disposition of a person in order to show that he acted in conformity therewith. Such evidence may be admitted for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident when such matters are relevant to a material issue in dispute.

Pursuant to *N.J.R.E.* 404(b), as it was under predecessor Rule 55, other-crime evidence is admissible when relevant to a

material issue in genuine dispute, and the evidence is necessary as proof of the disputed issue. *State v. Stevens*, 115 *N.J.* 289, 300–01, 558 *A.*2d 833 (1989). But because New Jersey adheres to the widespread view that other-crime evidence is highly inflammatory, having the "unique tendency to turn a jury against the defendant," *id.* at 302, 558 *A.*2d 833, trial courts are required to make a "careful and pragmatic evaluation" of the evidence based on the specific context in which it is offered. *Id.* at 303, 558 *A.*2d 833. To assist in that deliberative exercise, a "screen" for admissibility was established in *Cofield*. *State v. Fortin*, 162 *N.J.* 517, 539, 745 *A.*2d 509 (2000) (Long, J., concurring in part and dissenting in part); *State v. Marrero*, 148 *N.J.* 469, 483, 691 *A.*2d 293 (1997) (stating that *Cofield*'s four-part test distilled years of decisional law determining when other-crime evidence is admissible). The decision in *Cofield* established a rule of general applicability designed "to avoid the over-use of extrinsic evidence of other crimes or wrongs." 127 *N.J.* at 338, 605 *A.*2d 230. To be admissible, the other-crime evidence must have the following characteristics:

1. The evidence of the other crime must be admissible as relevant to a material issue;

2. It must be similar in kind and reasonably close in time to the offense charged;

3. The evidence of the other crime must be clear and convincing; and

4. The probative value of the evidence must not be outweighed by its apparent prejudice.

[*Id.* at 338, 605 *A.*2d 230 (citations omitted).]

■ The requirement that the State must produce "clear and convincing evidence" of other-crime conduct before such evidence may be admitted is firmly rooted in New Jersey case law. This Court articulated the requirement in *State v. Stevens, supra,* 115 *N.J.* at 289, 558 *A.*2d 833. In *Stevens,* the defendant, a police officer, was indicted for official misconduct. The admissibility of three other instances of misconduct by the defendant became an issue in the case. The victims of the alleged misconduct provided testimony concerning the other incidents that had not been the bases of criminal charges. 115 *N.J.* at 297, 558 *A.*2d 833. This

Court affirmed the Appellate Division, noting that the trial court had conducted a hearing to determine the admissibility of the three other instances of alleged misconduct, and that the trial court had concluded there was "clear and convincing evidence" that on three prior occasions the defendant used his position to intimidate women sexually. *Ibid.* In *State v. Harvey*, 121 *N.J.* 407, 581 *A.*2d 483 (1990), the Court reiterated the *Stevens* rule, noting "[t]he State bears the burden of proving other crimes by clear and convincing evidence." *Id.* at 433, 581 *A.*2d 483.

In *Cofield* then, when adopting the current four-prong test concerning other-crime evidence, the Court adhered to the settled preference for requiring "clear and convincing evidence that the crime did in fact occur." *State v. Oliver*, 133 *N.J.* 141, 151, 627 *A.*2d 144 (1993). The *Cofield* decision questioned the more lenient approach to the admissibility of other-crime evidence taken by the federal courts, noting that the federal approach has not been without a price in trial management. 127 *N.J.* at 334–35, 605 *A.*2d 230. The Court observed that the admissibility of uncharged misconduct has been described as "the single most important issue in contemporary criminal evidence law." *Ibid.* (quoting Edward J. Imwinkelried, *The Use of Evidence of an Accused's Uncharged Misconduct to Prove Mens Rea: The Doctrines of Which Threatens to Engulf the Character Evidence Prohibition*, 51 *Ohio St. L.J.* 575, 576 (1990)). The Court also observed that Federal Rule of Evidence 404(b) has "generated more published opinions than any other subsection of the Federal Rules ... [and] errors in the introduction of uncharged misconduct are the most frequent basis for reversal in criminal cases." *Cofield, supra*, 127 *N.J.* at 335, 605 *A.*2d 230 (quoting Imwinkelried, *supra*, 51 *Ohio St. L.J.* at 577). Accordingly, the *Cofield* decision rejected application of the federal model for admissibility of other-crime evidence and articulated our four-prong standard. 127 *N.J.* at 334–35, 605 *A.*2d 230. *See also* 22 C. WRIGHT & K. GRAHAM, FEDERAL PRACTICE AND PROCEDURE: EVIDENCE § 5239, at 427 (1978) (stating that "[t]here is no question of evidence more frequently litigated in the appellate courts than the admissibility of evidence

of other crimes, wrongs, or acts"); *Evidence—The Emotional Propensity Exception: State v. Treadaway*, 1978 *Ariz. St. L.J.* 153, 156 n. 29 (discussing criticism of other crimes or misconduct evidence). That determination included rejection of the federal standard concerning the level of proof required for admission of other-crime evidence. *Cofield, supra*, 127 *N.J.* at 334–35, 605 *A.*2d 230 (referencing more lenient standard of proof permitted by *Huddleston v. United States*, 485 *U.S.* 681, 108 *S.Ct.* 1496, 99 *L.Ed.*2d 771 (1988)).

In *Huddleston v. United States*, the United States Supreme Court addressed whether the district court must make a preliminary finding that the Government proved the "other act" under Federal Rule of Evidence 404(b) by a preponderance of the evidence. 485 *U.S.* at 682, 108 *S.Ct.* at 1497, 99 *L.Ed.*2d at 778. *Huddleston* resolved a split among circuit courts. *Id.* at 685, 108 *S.Ct.* at 1499, 99 *L.Ed.*2d at 779. Prior to *Huddleston*, the First, Fourth, Fifth, and Eleventh Circuits allowed the admission of similar act evidence if the evidence was sufficient to allow the jury to find that the defendant committed the act. *Id.* at 685 n. 2, 108 *S.Ct.* at 1499 n. 2, 99 *L.Ed.*2d at 779 n. 2. *See, e.g., United States v. Ingraham*, 832 *F.*2d 229, 235 (1st Cir.1987); *United States v. Beechum*, 582 *F.*2d 898, 914 (5th Cir.1978), *cert. denied*, 440 *U.S.* 920, 99 *S.Ct.* 1244, 59 *L.Ed.*2d 472 (1979). The Sixth and Second Circuits prohibited the introduction of similar act evidence unless the trial judge found that the defendant committed the act by a preponderance of the evidence. *Huddleston, supra*, 485 *U.S.* at 685 n. 2, 108 *S.Ct.* at 1499 n. 2, 99 *L.Ed.*2d at 779 n. 2. *See, e.g., United States v. Leonard*, 524 *F.*2d 1076, 1090–91 (2d Cir.1975). The Seventh, Eighth, Ninth, and District of Columbia Circuits required the Government to prove by clear and convincing evidence that the act occurred. *Huddleston, supra*, 485 *U.S.* at 685 n. 2, 108 *S.Ct.* at 1499 n. 2, 99 *L.Ed.*2d at 779 n. 2. *See, e.g., United States v. Leight*, 818 *F.*2d 1297, 1302 (7th Cir.), *cert. denied*, 484 *U.S.* 958, 108 *S.Ct.* 356, 98 *L.Ed.*2d 381 (1987); *United States v. Weber*, 818 *F.*2d 14, 15 (8th Cir.1987); *United States v. Vaccaro*, 816 *F.*2d 443, 452 (9th Cir.1987).

■ The Supreme Court held that the district court need not make a finding that the prosecution proved the act by a preponderance of the evidence. Rather, the trial court must examine all the evidence and decide whether the jury could reasonably conclude by a preponderance of the evidence that the other crime, wrong, or bad act occurred and that the defendant was the actor. *Huddleston, supra,* 485 *U.S.* at 689–90, 108 *S.Ct.* at 1501, 99 *L.Ed.*2d at 782–83. In other words, such evidence may be admitted if there is proof to support a possible jury finding by a preponderance of the evidence that the defendant committed the act. The court does not make its own preliminary finding that it is persuaded by a preponderance of the evidence that the Government has proved the other act sought to be admitted under Federal Rule of Evidence 404(b). *Id.* at 690, 108 *S.Ct.* at 1501, 99 *L.Ed.*2d at 782–83. Without discussing the merits of the "clear and convincing" standard, the Court turned to the legislative history of Federal Rule of Evidence 404(b) to support its holding. *Id.* at 687–689, 108 *S.Ct.* at 1500–01, 99 *L.Ed.*2d at 780–82. See *United States v. Gonzalez–Lira,* 936 *F.*2d 184, 190 n. 3 (5th Cir.1991) (noting that there had been division among Circuit Courts concerning applicable standard of proof for introduction of evidence of prior bad acts, but *Huddleston* resolved that conflict).

Despite *Huddleston's* interpretation of the standard of proof required by the Federal Rule of Evidence governing other crime evidence, many jurisdictions have rejected a preponderance of the evidence standard and instead require "clear and convincing" proof for the admission of other-crime evidence. The Supreme Court of Arizona, in *State v. Terrazas,* 189 *Ariz.* 580, 944 *P.*2d 1194 (1997), has observed that the State of Arizona is not alone in requiring a higher standard of proof of an other crime or wrong, citing *Johnson v. United States,* 683 *A.*2d 1087, 1093 (D.C.App. 1996), *cert. denied,* 520 *U.S.* 1148, 117 *S.Ct.* 1323, 137 *L.Ed.*2d 484 (1997); *Phillips v. State,* 591 *So.*2d 987, 989 (Fla.App.1991); *Ayers v. State,* 335 *Md.* 602, 645 *A.*2d 22, 37 (1994); *State v. Spaeth,* 552 *N.W.*2d 187, 193 (Minn.1996); *State v. Wilson,* 5 *Neb.App.* 125, 556 *N.W.*2d 643, 652 (1996); *State v. Smith,* 300 *S.C.* 216, 387 *S.E.*2d

245, 247 (S.C.1989); *State v. McCary*, 922 *S.W.*2d 511, 514 (Tenn. 1996); *State v. Cohen*, 634 *A.*2d 380, 386 (Del.Super.1992); *State v. Howell*, 557 *N.W.*2d 908, 911 (Iowa App.1996); *Winiarz v. State*, 107 *Nev.* 812, 820 *P.*2d 1317, 1321 (1991); *State v. Michaud*, 135 *N.H.* 723, 610 *A.*2d 354, 356 (1992). *See also Welch v. State*, 2 *P.*3d 356, 365 (Okla.Crim.App.2000) (requiring clear and convincing evidence); *State v. Strain*, 190 *Mont.* 44, 618 *P.*2d 331, 337 (1980) (same).

In adopting the "clear and convincing" proof requirement, the *Terrazas* court stated that "there are important reasons to apply a clear and convincing standard, rather than some lesser standard, to evidence of prior bad acts." 944 *P.*2d at 1198. Such evidence is "capable of having an impact beyond its relevance to the crime charged and may influence the jury's decision on issues other than those on which it was received, despite cautionary instructions from the judge." *Ibid.* (citing Note, *Winship on Rough Waters: The Erosion of the Reasonable Doubt Standard*, 106 *Harv. L. Rev.* 1093, 1103 (1990)). The court further stated:

> Studies confirm that the introduction of a defendant's prior bad acts "can easily tip the balance against the defendant." Edward J. Imwinkelried, *Uncharged Misconduct Evidence*, 1 *SUM Crim. Just.* 6, 8 (1986). Because of the high probability of prejudice from the admission of prior bad acts, the court must ensure that the evidence against the defendant directly establishes "that the defendant took part in the collateral act, and [ ] shield the accused from prejudicial evidence based 'upon highly circumstantial inferences.'" Vivian M. Rodriguez, *The Admissibility of Other Crimes, Wrongs or Acts Under the Intent Provision of Federal Rule of Evidence 404(B): The Weighing of Incremental Probity and Unfair Prejudice*, 48 *U. Miami L.Rev.* 451, 457 (1993).

[944 *P.*2d at 1198.]

The court concluded that "[t]o allow a lesser standard in a criminal case is to open too large a possibility of prejudice." *Ibid.*

The third prong of our *Cofield* test requires that the judge serve as gatekeeper to the admission of other-crime evidence. The trial court must make the finding that proof of the other-crime evidence is clear and convincing. Thus, the third prong of *Cofield* requires the trial court to ensure that the jury hears only clear and convincing proof that the other crime or bad act

occurred and that the defendant was responsible for the conduct. *State v. G.V.*, 162 *N.J.* 252, 275, 744 *A.*2d 137 (2000) (Coleman, J., concurring in part and dissenting in part). That rule is a necessary component of the fortification against the possibility of unfair prejudice when a court determines whether relevant other-crime evidence should be admitted in the trial of an accused.

### III.

### A.

We first address whether uncorroborated testimony of other-crime evidence offered by a cooperating co-defendant requires special treatment different from that accorded the assessment of other evidence of other crimes. Defendant and *amicus curiae* Association of Criminal Defense Lawyers of New Jersey urge us to adopt a *per se* rule banning such testimony.

A *per se* ban on accomplice testimony in support of other-crime evidence seeks, in effect, to place that testimony with those categories of testimony that are withheld from the trier of fact, notwithstanding their relevance to the truth, because of other overriding societal policy concerns. For example, privilege accomplishes the same end for certain communications, and so does the exclusionary rule of *Miranda v. Arizona*, 384 *U.S.* 436, 86 *S.Ct.* 1602, 16 *L.Ed.*2d 694 (1966). In their own spheres, each example precludes the fact-finder from engaging in the familiar weighing of the probative value of the evidence against the danger of undue prejudicial effect, and instead imposes a blanket prohibition of any consideration of the testimony's worth to the search for truth. There are other bright-line rules, adopted for policy purposes, that forego any individualized assessment of the reliability of the evidence and simply preclude the evidence from the finder of fact in all instances. *See also State v. Reed*, 133 *N.J.* 237, 261–62, 627 *A.*2d 630 (1993) (imposing bright-line rule barring admissibility of confession when suspect is not informed that attorney is present and is asking to speak with him); *State v. Hartley*, 103 *N.J.* 252,

267–68, 511 *A.*2d 80 (1986) (imposing " 'bright-line,' inflexible, minimum requirement" that *Miranda* warnings be freshly administered to previously-warned suspect prior to resumption of custodial interrogation).

We do not view uncorroborated testimony of a cooperating co-defendant concerning other-crime evidence as being analogous to those other categories of evidence from which the trier of fact must be automatically shielded. The combination of the requirement of clear and convincing proof of relevant other-crime evidence, coupled with the weighing of probative value against the danger of undue prejudice, provides an adequate standard for a court's exercise of its gatekeeping function. We note that the parties cite to no jurisdiction that imposes an absolute ban on uncorroborated accomplice testimony concerning other-crime evidence, and our research has discovered none. Defendant and *amicus curiae*, Association of Criminal Defense Lawyers of New Jersey, urge this Court to take that first step, but we decline to ban the use of uncorroborated accomplice testimony as evidence of other crimes or acts admissible under *N.J.R.E.* 404(b) provided a full *Cofield* analysis is conducted.

Indeed, such a step would be inconsistent with our precedent concerning the use of uncorroborated accomplice testimony. Because our case law allows uncorroborated accomplice testimony to support a guilty verdict beyond a reasonable doubt, it would be incongruous to hold that uncorroborated accomplice testimony of other-crime evidence is, *per se*, incapable of satisfying the clear and convincing standard of proof under *Cofield*. See *In re Seaman*, 133 *N.J.* 67, 82–83, 627 *A.*2d 106 (1993); *State v. Zwillman*, 112 *N.J.Super.* 6, 12, 270 *A.*2d 284 (App.Div.1970), *certif. denied*, 57 *N.J.* 603, 274 *A.*2d 56 (1971); *State v. Burgess*, 97 *N.J.Super.* 428, 435, 235 *A.*2d 231 (App.Div.1967). We are not alone in allowing uncorroborated accomplice testimony to support a conviction. *See, e.g., People v. Young*, 128 *Ill.*2d 1, 131 *Ill.Dec.* 86, 538 *N.E.*2d 461, 472 (1989); *State v. Bey*, 217 *Kan.* 251, 535 *P.*2d 881, 888 (1975); *State v. Campbell*, 239 *Neb.* 14, 473 *N.W.*2d

420, 426 (1991); *State v. Brooks*, 49 *N.C.App.* 14, 270 *S.E.*2d 592, 597 (1980); *State v. Claassen*, 131 *Wash.* 598, 604, 230 *P.* 825 (1924). And, although no jurisdiction has imposed a *per se* ban on uncorroborated accomplice testimony of other-crime evidence, several jurisdictions have held that such accomplice testimony is sufficient to meet the clear and convincing standard for evidence of other crimes. *United States v. Curry*, 79 *F.*3d 1489 (7th Cir.1996) (allowing accomplice testimony, noting that witnesses' motives for testifying do not render their testimony inherently unreliable); *United States v. Dolliole*, 597 *F.*2d 102 (7th Cir.), *cert. denied*, 442 *U.S.* 946, 99 *S.Ct.* 2894, 61 *L.Ed.*2d 318 (1979) (allowing uncorroborated testimony from accomplice); *United States v. Trevino*, 565 *F.*2d 1317 (5th Cir.), *cert. denied*, 435 *U.S.* 971, 98 *S.Ct.* 1613, 56 *L.Ed.*2d 63 (1978) (allowing accomplice to testify despite fact that immunity was provided and testimony was uncorroborated; because testimony was sufficient for conviction, it was also sufficient under clear and convincing standard). The four-prong test established under *Cofield* provides the appropriate framework for assessing whether other-crime evidence should be admitted for the jury's consideration. We value the individualized assessment that a case-by-case approach allows concerning the threshold question of admissibility of other-crime evidence. The jury ultimately will determine whether the other-crime evidence is persuasive to convict a defendant beyond a reasonable doubt. Accordingly, we hold that a *per se* ban on uncorroborated other-crime testimony of a cooperating co-defendant is unwarranted.

### B.

The Appellate Division found that Gerardi's testimony, and in particular his cross-examination, demonstrated overwhelmingly that it could not satisfy a clear and convincing standard of proof. *Hernandez, supra,* 334 *N.J.Super.* at 271–72, 758 *A.*2d 1139. The court referred to Gerardi's admission that he lies under oath with impunity, that he was hostile to defendant because defendant had reneged on a deal with Gerardi, and that he testified in exchange

for a favorable plea bargain. The court observed that no fact-finder could come to a conclusion that the clear and convincing standard was satisfied concerning the truthfulness of Gerardi's testimony. We disagree.

The standard of proof referred to as "clear and convincing" was described recently as follows:

> Clear and convincing "evidence is that which 'produce[s] in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established,' evidence 'so clear, direct and weighty and convincing as to enable (the factfinder) to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue.'" *In re Boardwalk Regency Corp.*, 180 *N.J.Super.* 324, 339, 434 *A.*2d 1111 (App.Div.1981) (alteration in original) (quoting *Aiello v. Knoll Golf Club*, 64 *N.J.Super.* 156, 162, 165 *A.*2d 531 (App.Div.1960)), *modified*, 90 *N.J.* 361, 447 *A.*2d 1335 (1982), *appeal dismissed sub nom., Perlman v. Attorney Gen.*, 459 *U.S.* 1081, 103 *S.Ct.* 562, 74 *L.Ed.*2d 927 (1982); *see In re Purrazzella*, 134 *N.J.* 228, 240, 633 *A.*2d 507 (1993); Biunno, *Current N.J. Rules of Evidence*, comment 6 on N.J.R.E. 101(b)(1)(2000). The clear and convincing standard may be satisfied by uncorroborated testimonial evidence. *In re Seaman*, 133 *N.J.* 67, 84, 627 *A.*2d 106 (1993).

> [*In re Samay*, 166 *N.J.* 25, 30, 764 *A.*2d 398 (2001) ].

Pursuant to *Cofield*, the trial court, acting as gatekeeper to the admission of other-crime evidence, must conclude that the testimony concerning the other crime or act satisfies the clear and convincing standard of proof. Ordinarily that fact-finding is made after the court conducts a *Rule* 104 hearing outside the presence of the jury. In a *Rule* 104 hearing the trial court would hear the specific content of the other-crime testimony and be able to assess its relevance to an issue in dispute and its necessity to the proof of that issue. As an integral part of that assessment, the court also would determine whether it finds the proof of the other crime to be clear and convincing. Finally, the court would employ the balancing test of *Cofield*'s fourth prong that incorporates the traditional balancing test of Rule 403. The court would balance the probative value of the evidence against the undue prejudice to the defendant and decide whether the jury should hear the other-crime evidence.

Here, no *Rule* 104 hearing was conducted. Nonetheless, contrary to the Appellate Division, we find that a trial court

performing the gatekeeper role required by *Cofield* could determine that the clear and convincing standard of proof was met by Gerardi's testimony. A fact-finder could conclude that in the tough cross-examination of Gerardi, he was brutally honest in answering defense counsel's searching questions. A fact-finder could further conclude that despite Gerardi's answers to theoretical questions about lying under oath, his testimony was truthful concerning his relationship with defendant, including going to New York to purchase crack and their sales together. On direct examination, Gerardi made it no secret that he intended originally to take full responsibility for the drug sale that led to his and defendant's arrest on February 11, 1997. He explained why he changed his statement concerning defendant's role, and that his agreement to testify was critical to the plea bargain he struck with the State. Those "admissions" were readily acknowledged by Gerardi, not wrested from him on cross-examination. Most importantly, his demeanor and overall candor were observed by the trial court. An abuse of discretion standard of review applies to a trial court's determination concerning the admissibility of other-crime evidence. See *State v. Marrero, supra,* 148 *N.J.* at 483–84, 691 *A.*2d 293 (stating that determinations on admissibility of other-crime evidence are best left to trial court's discretion; trial court's decision is entitled to deference and is to be reviewed under abuse of discretion standard). Applying the abuse of discretion standard, we conclude that a trial court could find that the clear and convincing prong of *Cofield,* as applied to the specific facts of this case, was met.

The lack of a *Rule* 104 hearing record and express trial court findings is nonetheless troubling. We do not have the benefit of the trial court's analysis of each *Cofield* prong concerning the multiple other-crime statements testified to by Gerardi. Gerardi's testimony addressed 1) his long acquaintance with defendant and how he became engaged in drug sales with or for defendant during the period from the 1996 Christmas holiday time to February 11, 1997; 2) the trip Gerardi took with defendant to New York when defendant purchased a block of cocaine; 3) the reason why

Gerardi held the drugs during drug sales but did not retain the cash received for each sale; 4) the explanation for needing defendant's approval to discount the price per bag of crack cocaine when multiple bags were purchased; 5) the assertion that Gerardi and defendant sold drugs together, as Gerardi described, twenty times during the two-month period preceding the day of arrest; and 6) details of Gerardi's and defendant's actions, including drug sale transactions, preceding their arrest on the evening of February 11, 1997. Broken down into its component parts, it would appear that much of Gerardi's testimony could have been found relevant and necessary to a material issue in dispute.

Defendant declined to testify and maintained Gerardi only was paying him back for a loan when Gerardi handed defendant cash after the Sanchez sale. As a result of that trial strategy, it fell to the jury to decide one essential issue: whether the exchange of money between Gerardi and defendant was a legitimate financial transaction or a drug deal. Some of the prior dealings between Gerardi and defendant were relevant to the inquiry. For example, Gerardi's testimony regarding a trip with defendant to New York to buy a $300–$400 block of crack cocaine, if close in time to February 11, 1997, could establish the opportunity for a drug deal. Similarly, temporally proximate drug sales could be admitted to counter Hernandez's suggestion that Gerardi's "motive" or "state of mind" in giving him money and his "motive" or "state of mind" in receiving it on February 11, 1997 was repayment of a loan. On the present record, those are the only "other crime" uses that appear legitimate. However, we leave open the possibility that on a complete record after a *Rule* 104 hearing and full exposition by the parties of their legal positions regarding temporally proximate other-crime evidence, that some other use might be proper. That is for the trial court to determine. In short, if fully analyzed, a trial court could find that portions of Gerardi's testimony could pass the *Cofield* four-part analysis. However, a reviewing court should have a record in which the trial court's analysis and findings are expressly stated.

Having said that, the record does not demonstrate any basis for concluding that *Cofield*'s fourth prong balancing test could be satisfied in respect of Gerardi's statement that he and defendant sold drugs in the manner described twenty times during the two months prior to their arrest. That extremely prejudicial testimony smacks of prohibited "propensity" evidence. To be sure, the question of defendant's constructive possession of the drugs held by Gerardi the evening of February 11, 1997, was genuinely in issue at trial. But, the probative value of the reference to twenty earlier sales over a two-month period appears to be outweighed by its obvious prejudicial effect. And, even if one could hypothesize some weighty probative value to attribute to that troubling testimony that would outweigh its undue prejudicial affect, it is difficult, if not impossible, to divine the limiting instruction that could offset its "propensity" impact. In fact, no aspect of the trial court's charge concerned itself with that specific testimony.

We note that the prosecutor's proffer did not inform the trial court of that portion of Gerardi's testimony concerning the twenty prior sales. Had a *Rule* 104 hearing been held we presume that that portion of his testimony would have been revealed. Also, there was no objection at the time Gerardi testified. Nonetheless, the prejudicial impact of Gerardi's testimony that he engaged in drug sales with or for defendant twenty times in the approximately two-month period preceding his arrest is sufficient to raise reasonable doubt about whether it led to defendant's conviction. Its admission was capable of producing an unjust result based on the record as presented in this appeal. *R.* 2:10–2.

## C.

Although the Appellate Division based its decision to reverse defendant's conviction on the failure of Gerardi's other-crime testimony to satisfy the third prong of the *Cofield* test, the panel also stated that it was "constrained to note that the charge

to the jury failed to meet the requirement of *Cofield* that the jury be specifically advised of the limited use it may make of other-crimes evidence." *Hernandez, supra,* 334 *N.J.Super.* at 273, 758 *A.*2d 1139. The panel faulted the instruction for failing to focus the jury properly on the purposes for which the evidence was offered and for failing to provide the jury with a sufficient factual basis to assist it in understanding the limited applicability of the evidence. *Ibid.* We agree with the Appellate Division that the deficiency in the jury charge requires reversal and a new trial. We also note that the Attorney General informed the Court at oral argument that he agrees that the instruction was flawed, parting company with the prosecutor on that issue.

A carefully crafted limiting instruction must explain to the jury the limited purpose for which the other-crime evidence is being offered. *Fortin, supra,* 162 *N.J.* at 534, 745 *A.*2d 509. "[T]he inherently prejudicial nature of such evidence casts doubt on a jury's ability to follow even the most precise limiting instruction." *Stevens, supra,* 115 *N.J.* at 309, 558 *A.*2d 833. In setting forth the prohibited and permitted purposes of the evidence the trial court must include within the instruction "sufficient reference to the factual context of the case to enable the jury to comprehend and appreciate the fine distinction to which it is required to adhere." *Id.* at 304, 558 *A.*2d 833. Mere reference to the illustrative exceptions contained in the *Rule* is not sufficient. *Id.* at 305, 558 *A.*2d 833.

At the close of trial, the court instructed the jury as follows:

All right. Now, ladies and gentlemen, in this particular case the State has introduced testimony through the witness, George Gerardi, as to alleged prior acts allegedly concerning drug distribution by Mr. Hernandez and by Mr. Gerardi himself allegedly working for and with Mr. Hernandez.

Now, ladies and gentlemen, normally such evidence of prior alleged wrongs or uncharged crimes or acts are not permitted under the Rules of Evidence. This is because our Rules of Evidence specifically exclude evidence that a defendant has committed uncharged crimes or wrongs or acts if it is offered only to show that he had a disposition or tendency to do wrong and therefore must be or is likely guilty of the instant charges.

However, our rules do permit evidence of uncharged crimes, wrongs or acts when the evidence is used for some other purpose.

In this case, again, evidence has been admitted through the testimony of Mr. Gerardi regarding past alleged acts of drug distribution by Mr. Hernandez.

Ladies and gentlemen, you may consider such evidence when considering factors such as Mr. Hernandez' state of mind on the day in question, February 11, 1997, and his motive, if any, for allegedly participating in the charged offenses.

You may also consider such evidence as it may relate to the alleged *modus operandi*, meaning method of operation, of drug distribution as testified to by Mr. Gerardi allegedly involving Mr. Gerardi and Hernandez.

You should consider this evidence when considering these factors, but you may not use this evidence as substantive evidence. For example, you may not say that if he engaged in such activities before February 11, 1997, then, he must be guilty of the offenses charged on that date. Again, you may only use the evidence as I have just explained it herein and not for any other purpose.

The trial court informed counsel of the proposed instruction in advance and gave defense counsel additional time to consider whether objections would be made. Defendant did not object to the charge. Defendant asserted that the instruction was flawed only when the case reached the Appellate Division. Thus, under the plain error rule, errors in the instruction should be disregarded unless "clearly capable of producing an unjust result." *R.* 2:10–2. "Under that standard the issue becomes whether the instruction created a possibility of injustice, defined to mean 'one sufficient to raise a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached.'" *Marrero, supra,* 148 *N.J.* at 494, 691 *A.*2d 293.

As the charge reflects, the jury was instructed on the prohibited uses of the evidence. The flaw in the instruction lies in its failure to focus the jury precisely on the permissible uses of the other-crime evidence in the context of the facts of this case and those issues genuinely in dispute. Without expressing a view on the permissibility of all uses cited by the trial court, we note that the instruction did not explain how the evidence was to be legitimately examined without being considered as propensity evidence. The trial court did not tie the various aspects of Gerardi's other-crime evidence to issues in the case that genuinely were disputed when counseling the jury on the precise, and limited, permissible use of

the evidence as required by *State v. G.S., supra,* 145 *N.J.* 460, 472, 678 *A.*2d 1092 (1996). Although the court did caution the jury against considering the testimony as evidence of defendant's propensity to commit the charged crimes, the Appellate Division correctly concluded that the trial court did not explain specifically its permissible use in connection with the facts of this case. That shortcoming in the charge requires reversal of defendant's conviction because the only evidence of defendant's guilt was Gerardi's testimony and Officer Morales's arguably equivocal observations that, standing alone, could leave the jury with a reasonable doubt. *State v. Bragg,* 295 *N.J.Super.* 459, 468–69, 685 *A.*2d 488 (App.Div. 1996). The flaw in the charge is acute in respect of the testimony that Gerardi and defendant sold drugs as he described on twenty other occasions during the two months prior to their arrest. Accordingly, the deficiency in the instruction is sufficient to raise reasonable doubt about the reliability of defendant's conviction and accordingly is error capable of producing an unjust result. *R.* 2:10–2.

### IV.

The judgment of the Appellate Division is affirmed as modified and the matter is remanded to the Law Division for further proceedings consistent with this opinion. In a retrial, the court should conduct a *Rule* 104 hearing on all aspects of the precise other-crime testimony, if any, to be offered by Gerardi or any other witness.

VERNIERO, J., concurring.

I join the Court's disposition substantially for the reasons expressed in its comprehensive opinion. I write separately to express my view that the adequacy of the jury instruction is a close question, especially when considered under the plain-error standard. The critical language in the charge given in this case is similar to language found in the model charge, and in charges sustained in other cases. See *State v. G.S.,* 145 *N.J.* 460, 678 *A.*2d

1092 (1996); *State v. Cusick,* 219 *N.J.Super.* 452, 530 *A.*2d 806 (App.Div.), *certif. denied,* 109 *N.J.* 54, 532 *A.*2d 1118 (1987). I resolve my doubts in favor of defendant principally because the other-crimes evidence broadly admitted below warranted a particularly forceful instruction "to enable the jury to comprehend and appreciate the fine distinction to which it [was] required to adhere." *State v. Cofield,* 127 *N.J.* 328, 341, 605 *A.*2d 230 (1992) (quoting *State v. Stevens,* 115 *N.J.* 289, 304, 558 *A.*2d 833 (1989)).

Additionally, as noted by the majority, the Attorney General acknowledged at oral argument that the jury charge was inadequate. By statute and as recognized in decisional law, the Attorney General is the chief law enforcement officer and supervises all prosecutors. *N.J.S.A.* 52:17B–98, –103; *Wright v. State,* 169 *N.J.* 422, 451–52, 778 *A.*2d 443 (2001). In this narrow setting, the Attorney General's acknowledgment arguably constitutes a withdrawal of the jury instruction issue from this appeal, notwithstanding the contrary position advanced by the county prosecutor.

Under all the circumstances, the Appellate Division's determination in respect of the jury charge should not be disturbed.

*For affirmance as modified, remand*—Chief Justice PORITZ and Justices STEIN, COLEMAN, LONG, VERNIERO, LaVECCHIA, and ZAZZALI—7.

*Opposed*—None.