**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5394-15T3

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

RAHEEM JONES,

    Defendant-Appellant.

_____

Submitted November 5, 2018 – Decided December 14, 2018

Before Judges Messano and Fasciale.

On appeal from Superior Court of New Jersey, Law Division, Passaic County, Indictment No. 13-05-0503.

Joseph E. Krakora, Public Defender, attorney for appellant (Rebecca L. Gindi, Assistant Deputy Public Defender, of counsel and on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent (Lauren Bonfiglio, Deputy Attorney General, of counsel and on the briefs).

Appellant filed pro se supplemental briefs.

PER CURIAM

A jury convicted defendant Raheem Jones of first-degree murder in the stabbing death of L.S.,[1] N.J.S.A. 2C:11-3(a)(1) and 2C:11-3(a)(2) (count one); third-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(d) (count two); and fourth-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(d) (count three).  At sentencing, the State asserted defendant was a "persistent offender" and moved to impose an extended term of imprisonment pursuant to N.J.S.A. 2C:44-3(a).

The judge merged counts two and three into count one.  He granted the State's motion and imposed a life term of imprisonment subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2.  The judgment of conviction (JOC) reflects defendant is "also subject to a period of thirty-five . . . years of parole ineligibility on the extended sentence on his life term."

Defendant raises the following issues on appeal.

POINT I

BECAUSE THE JURY HEARD INADMISSIBLE AND HIGHLY PREJUDICIAL EVIDENCE THAT [DEFENDANT] PUNCHED HIS GIRLFRIEND AND BROKE HER NOSE ON A PRIOR OCCASION, [DEFENDANT] WAS DENIED HIS RIGHT TO A FAIR TRIAL.

---

[1] We use initials to maintain the confidentiality of the victim and her family.

POINT II

EVEN IF THIS COURT FINDS THAT THE OTHER-CRIME EVIDENCE WAS ADMISSIBLE, THE TRIAL COURT'S FAILURE TO INSTRUCT THE JURY ON THE LIMITED USE OF THE EVIDENCE AND FAILURE TO RELATE THE OTHER-CRIME EVIDENCE TO THE FACTS OF THE CASE DENIED [DEFENDANT] A FAIR TRIAL. (Not Raised Below).

POINT III

THE PROSECUTOR'S HIGHLY PREJUDICIAL EMOTIONAL APPEALS TO THE JURY IN SUMMATION WERE IMPROPER AND REQUIRE REVERSAL.

POINT IV

[DEFENDANT]'S DISCRETIONARY EXTENDED-TERM SENTENCE SHOULD BE VACATED AND REDUCED BECAUSE IT WAS PROCEDURALLY DEFECTIVE AND MANIFESTLY EXCESSIVE.

Defendant raises the following points in a pro se supplemental brief.

POINT I

THE TESTIMONY BY PATROLMAN DANIEL LOFFIO AS TO THE DECLARATION MADE BY THE NON-TESTIFYING THREE[-]YEAR[-]OLD [M.S.] VIOLATED CRAWFORD V. WASHINGTON,[2] FOR THAT THE DECLARATION WAS TESTIMONIAL. [M.S.] WAS NOT UNAVAILABLE TO TESTIFY[,] AND

---

[2] Crawford v. Washington, 541 U.S. 36 (2004).

A-5394-15T3

THERE WAS NO PRIOR OPPERTUNITY [SIC] FOR THE DEFENSE TO CROSS[-]EXAMINE HER. U.S. CONST. AMENDS. VI, XIV, N.J. CONST. (1947) ART. I[,] PARAS[.] 1, 9, AND 10.

POINT II

THE COURT[] VIOLATED DEFENDANT[']S FIFTH, SIXTH, AND FOURTEENTH AMENDMENT RIGHTS OF DUE PROCESS FOR ALLOWING FRAUDULANT [SIC] TESTIMONY BY KEY WITNESS[ES] FOR THE STATE[,] BASHON HARDY AND JOSEPH TAYLOR. [(Not raised below).]

Having considered these arguments in light of the record and applicable legal principles, we affirm defendant's conviction. The State concedes the judge erred by imposing a sentence in addition to the life sentence imposed on the murder conviction. However, it is unclear whether the judge intended to impose an extended term or imposed a life term pursuant to N.J.S.A. 2C:11-3(b)(1) (permitting "a specific term of years . . . between [thirty] years and life imprisonment" as an ordinary sentence for murder). If the judge intended to impose an extended term, he clearly did not follow the dictates of State v. Pierce, 188 N.J. 155 (2006). We therefore vacate the sentence imposed and remand the matter for resentencing.

I.

Approximately two months before trial, the judge held a hearing pursuant to N.J.R.E. 104(a) at which the State produced no witnesses but

proffered evidence it intended to introduce at trial. Among other rulings, which we discuss in detail below, the judge concluded that a statement made by the victim's three-year-old granddaughter, M.S., to one of the responding police officers, Patrolman Daniel Loffio, was admissible as an excited utterance. N.J.R.E. 803(c)(2). The judge conducted a hearing prior to the start of trial, at which the State produced Loffio as a witness. Loffio testified about the circumstances surrounding the statement M.S. made to him — "Poppy killed Grandma." The judge again ruled M.S.'s statement was admissible, and in later testimony, Loffio told the jury about the child's statement.

In other testimony, S.S., the victim's daughter and M.S.'s mother, said defendant and the victim had been dating for ten-to-twelve years, and defendant frequently stayed in the apartment S.S. shared with her mother. On December 12, 2012, S.S. left M.S. in the care of the victim and S.S.'s grandmother. When S.S. arrived home in the early evening hours, M.S. was in the hallway, emotional and crying. M.S., who referred to defendant as "papa," told S.S., "my [p]apa killed my grandmother." S.S. ran upstairs and found her mother in a pool of blood. She immediately called 9-1-1, and the jury heard a recording of S.S.'s call. S.S. made the call with her own cellphone and testified her mother's phone was never located again.

The jury also heard the 9-1-1 call the victim made shortly before S.S. arrived. L.S. told the dispatcher, "I was stabbed to death. My boyfriend stabbed me . . . [a]ll over my body."

Joseph Taylor testified that when he heard his cousin, L.S., had been injured, he called her cellphone. Defendant answered and quickly hung up. Taylor went to the hospital and learned L.S. had died. Defendant never appeared at the hospital.

Defendant's uncle testified that he received a call from defendant, who said he had just stabbed his girlfriend. Defendant told his uncle "he caught her on the phone talking to another guy[,]" and "snapped." Bashon Hardy, defendant's cousin, testified that defendant arrived at his back door later in the evening, distraught and with his clothing covered in blood. Defendant told Hardy, "I think I f****d up. I think I killed my girl."

DNA testing revealed defendant was a major source of blood collected from under the victim's fingernails, however, other male relatives could not be completely ruled out because they shared the same profile. The autopsy revealed the victim was stabbed eleven times with various kitchen knives, causing severe lacerations to her neck, chest, back and left hand. One stab was so forceful that the blade of the knife broke off and lodged in the victim's neck.

Defendant did not testify or call any witnesses.

II.

A.

At the pre-trial N.J.R.E. 104 hearing, the State sought to introduce evidence of defendant's prior bad acts, including his assault of L.S. in 2002. The judge characterized the proffered evidence as "prior acts of domestic violence," introduced "through the testimony of the . . . victim's children, . . . the fact of the [d]efendant's guilty plea to an agg[ravated] assault . . . ." Applying the analysis required by State v. Cofield, 127 N.J. 328 (1992), over defendant's objection, the judge ruled the evidence was admissible.

During the trial testimony of S.S., at sidebar, the prosecutor informed the judge he intended to elicit sanitized evidence regarding defendant's prior assault of L.S. The testimony before the jury was limited to the following:

> Q: [S.S.], I want to direct your attention now. When you said your mom and [defendant] had been on and off again for at least ten years --
>
> A: Yes.
>
> Q: -- that would include that -- being in that dating relationship back in October 2002?
>
> A: Yes.
>
> Q: Specifically I want to direct your attention to October 20[,] 2002. Do you remember back then?
>
> A: Not really.

Q: Do you remember an incident where your mother had a broken nose?

A: Yes.

Q: And she had to go to the hospital for that broken nose?

A: Yes

Q: Do you remember how she got that broken nose?

A: Yes.

Q: Can you tell us how she got that -- just tell us how she got that broken nose?

A: [Defendant] punched her in her nose.

The judge immediately provided the following instructions:

The State is seeking to introduce evidence that defendant previously assaulted [L.S.]. Normally such evidence is not permitted under the Rules of Evidence. The rules specifically exclude evidence that a defendant has committed another crime or wrong or bad act when it's offered only to show that he has a disposition or tendency to do wrong, and therefore must be guilty of the charged offense.

Before you can give any weight to this evidence you must be satisfied that the defendant committed the other act of domestic violence. If you are not so satisfied you may not consider it for any purpose.

Our rules do, however, permit evidence of another crime or wrong or bad act when the evidence is used for certain specific narrow purposes. In this case[,] the State is seeking to introduce evidence that the defendant acted violently towards the victim,

8

herein, [L.S.], on a prior occasion. It seeks to do so in order to establish motive, intent, identity, or absence of mistake or accident with regard to the charged murder in this case.

Whether this evidence does, in fact, demonstrate defendant's motive, intent, identity, or absence of mistake is for you to decide. You may decide that the evidence does not demonstrate motive, intent, identity, or absence of mistake is not helpful to you at all. In that case you must disregard the evidence.

On the other hand, you may decide that that evidence does demonstrate motive, intent, identity or absence of mistake, and use it for that specific purpose.

You may not, however, use this evidence to decide that the defendant has a tendency to commit crimes or that he is a bad person. That is[,] you may not decide that just because the defendant has committed the previous bad act that me [sic] must be guilty of the present crimes.

Any evidence that's admitted in this regard will be admitted only to help you decide the specific questions of motive, intent, identity, or absence of mistake. You may not consider it for any other purpose and may not find the defendant guilty now simply because the State has offered evidence that he committed a previous bad act.

The judge repeated these instructions nearly verbatim in his final jury charge.

Defendant contends it was error to admit any evidence of his prior assault on the victim pursuant to N.J.R.E. 404(b), and, even if the evidence was admissible, the judge's instructions were inadequate and require reversal.

9

N.J.R.E. 404(b) provides:

> [E]vidence of other crimes, wrongs, or acts is not admissible to prove the disposition of a person in order to show that such person acted in conformity therewith. Such evidence may be admitted for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident when such matters are relevant to a material issue in dispute.

We afford great deference to the trial court's ruling on the admission of 404(b) evidence and "will . . . reverse[] only in light of a 'clear error of judgment.'" State v. Gillispie, 208 N.J. 59, 84 (2011) (quoting State v. Barden, 195 N.J. 375, 391 (2008)).

We need not review all four prongs of the well-established Cofield test, except to say that under the first prong, "[t]he evidence of the other crime must be admissible as relevant to a material issue." Barden, 195 N.J. at 389 (quoting Cofield, 127 N.J. at 338). The Court has recognized the "broad admission" of a "'wider range of evidence'. . . to prove motive, so long as it is a material issue in a case." State v. Calleia, 206 N.J. 274, 293-94 (2011) (quoting State v. Covell, 157 N.J. 554, 565 (1999)). Motive is material whenever the defendant asserts his innocence. State v. Castagna, 400 N.J. Super. 164, 178 (App. Div. 2008) (citations omitted).

During the pre-trial N.J.R.E. 104 hearing, relying in part on our decision in State v. Angoy, 329 N.J. Super. 79 (App. Div. 2000), the State argued prior

incidents of domestic violence demonstrated defendant's jealousy and possessiveness, providing a motive for the fatal assault. There, we held that evidence of the defendant's prior assault of the victim, one month before the homicide, adduced through the victim's mother's eyewitness testimony was properly admitted "as relevant to the jealousy and possessiveness which the State claimed" was the defendant's motive. Id. at 85-86.

The judge's decision to admit the proffered evidence was entirely sound, given the plethora of cases in addition to Angoy, which hold evidence of prior violence between a defendant and victim is probative of motive and intent. See, e.g., Castagna, 400 N.J. Super. at 183. ("Evidence of a history of abuse of a victim by a defendant has been held admissible to prove motive.") (citing State v. Engel, 249 N.J. Super. 336, 372-74 (App. Div. 1991) (collecting cases)); State v. Townsend, 374 N.J. Super. 25, 42 (App. Div. 2005), rev'd on other grounds, 186 N.J. 473 (2006) (evidence of domestic violence was "highly probative of several issues in dispute -- defendant's intent or purpose, his state of mind, his motive, the absence of mistake or accident").

In an effort to sanitize evidence of the prior assault, the prosecutor limited his questioning of S.S. See Barden, 195 N.J. at 390 ("In an effort to reduce the inherent prejudice in the admission of other-crimes evidence, our courts require the trial court to sanitize the evidence when appropriate.")

11                                                                              A-5394-15T3

(citing State v. Collier, 316 N.J. Super. 181, 185 (App. Div. 1998), aff'd o.b., 162 N.J. 27 (1999)).  Defendant argues that the sanitization resulted in evidence that was no longer probative of motive.  Instead, the testimony only proved defendant punched the victim years earlier[3] and did nothing more than permit the jury to conclude defendant had a propensity for violence.

The judge based his pre-trial ruling on proffered testimony from L.S.'s relatives about incidents of domestic violence, including an aggravated assault that occurred in 2002.  The evidence actually adduced before the jury, however, lacked any probative value as to motive, intent or other permissible use under N.J.R.E. 404(b).  In other words, proving defendant punched L.S. and broke her nose ten years before the fatal stabbing, without any testimony regarding the circumstances, lacked relevancy.  N.J.R.E. 401.

The judge had an obligation to reconsider his pretrial ruling in light of the evidence actually adduced.  As we have said,

> [i]n the event the trial court addresses [evidentiary] issues in a pre-trial proceeding, the trial court must be sensitive to the need to revisit its pre-trial rulings in

---

[3] The second Cofield prong requires the uncharged bad act "be similar in kind and reasonably close in time to the offense charged."  127 N.J. at 338.  The Court has since held it "is not universally required."  State v. Rose, 206 N.J. 141, 163 (2011).  In making the pre-trial ruling, the judge concluded the passage of time between the 2002 assault and the 2012 homicide was not fatal to admissibility because defendant was incarcerated for much of the intervening years.

light of the developing record at trial. The record developed at trial may differ from the record developed below on the parties' motions, perhaps substantially.

[State v. Cordero, 438 N.J. Super. 472, 484 (App. Div. 2014) (alteration in original) (citations omitted).]

However, there was no objection at sidebar when the prosecutor signaled his intention to introduce the highly sanitized evidence of the prior assault, and defense counsel never posed an objection thereafter to the truncated proof. In light of the substantial evidence of defendant's guilt, the admission of S.S.'s very limited testimony was not "clearly capable of producing an unjust result." R. 2:10-2.

Additionally, the judge immediately gave a limiting instruction that told the jury it could not consider the prior assault as evidence of defendant's violent predisposition. There was no objection, nor did defendant object when the judge repeated the instruction in his final charge.

"Our rules provide that a defendant waives the right to contest an instruction on appeal if he does not object to the instruction. R. 1:7-2. We may reverse on the basis of unchallenged error if we find error that was 'clearly capable of producing an unjust result.' R. 2:10-2." State v. Torres, 183 N.J. 554, 564 (2005). The Court has said that

[i]n the context of a jury charge, plain error requires demonstration of "[l]egal impropriety in the charge

prejudicially affecting the substantial rights of the defendant sufficiently grievous to justify notice by the reviewing court and to convince the court that of itself the error possessed a clear capacity to bring about an unjust result."

[State v. Burns, 192 N.J. 312, 341 (2007) (second alteration in original) (quoting State v. Jordan, 147 N.J. 409, 422 (1997)).]

We assess the allegation of error in light of "the totality of the entire charge, not in isolation." State v. Chapland, 187 N.J. 275, 289 (2006) (citing State v. DiFrisco, 137 N.J. 434, 491 (1994)). While an erroneous jury charge may be a "'poor candidate[] for rehabilitation' under the plain error theory," Jordan, 147 N.J. at 422-23 (quoting State v. Simon, 79 N.J. 191, 206 (1979)), we nonetheless consider the effect of any error in light "of the overall strength of the State's case." Chapland, 187 N.J. at 289.

The judge should have tailored the charge to the specific grounds for admissibility. See, e.g., State v. Hernandez, 170 N.J. 106, 132-33 (2001) (finding plain error in charge that failed to specifically explain permissible use of 404(b) evidence). However, given the limited nature of the testimony and the strength of the State's case, the flawed charge does not "raise reasonable doubt about the reliability of defendant's conviction . . . ." Id. at 133 (citing R. 2:10-2).

We conclude that neither the admission of evidence of the prior assault nor the judge's jury instructions require reversal.

B.

We reject both points raised by defendant in his pro se supplemental brief. The judge properly decided M.S.'s statement to Loffio was admissible as an excited utterance, and, because it was not testimonial, there was no Confrontation Clause violation. See State v. Buda, 195 N.J. 278, 304 (2008) (child's spontaneous statement to social worker after assault was admissible).

Defendant also asserts that Hardy's trial testimony was inconsistent with a prior statement he made to law enforcement. As we understand the point, defendant argues the judge should not have permitted Hardy to testify without a Gross[4] hearing. However, defendant misunderstands the holding in Gross, which requires the proponent establish the reliability of a witness's prior inconsistent statement at a separate hearing before it may be admitted as substantive evidence. 121 N.J. at 15-16. Neither the prosecutor nor defense counsel sought to admit Hardy's prior statement as substantive evidence.[5]

---

[4] State v. Gross, 121 N.J. 1 (1990).

[5] Although the point heading in defendant's brief incorporates a similar argument regarding Taylor's testimony, defendant makes little reference to Taylor in the brief and asserts no substantive legal argument as to error. Any issue not properly briefed is considered waived. Drinker Biddle & Reath LLP

(continued)

C.

Defense counsel lodged an objection after the prosecutor completed his summation, asserting the State had injected emotion and "God" into the case. The judge considered the argument and denied the objection, ruling the comments did "not inject[] any emotion into [the case] that wasn't already there."  He noted the prosecutor's comments about God were in the context of the victim's own words during her 9-1-1 call to police.

On appeal, defendant cites those remarks and others, as well as the prosecutor's decision to replay both 9-1-1 calls and demonstrate the stabbing during summation, and argues the totality of the summation requires reversal. We disagree.

While prosecutors are entitled to zealously argue the merits of the State's case, State v. Smith, 212 N.J. 365, 403 (2012), they occupy a special position in our system of criminal justice.  State v. Daniels, 182 N.J. 80, 96 (2004). "[A] prosecutor must refrain from improper methods that result in a wrongful conviction, and is obligated to use legitimate means to bring about a just conviction."  Ibid. (quoting State v. Smith, 167 N.J. 158, 177 (2001)).  "[T]he

(continued)
v. N.J. Dep't of Law and Pub. Safety, Div. of Law, 421 N.J. Super. 489, 496 n.5 (App. Div. 2011).

assistant prosecutor's duty is to prove the State's case based on the evidence and not to play on the passions of the jury or trigger emotional flashpoints, deflecting attention from the hard facts on which the State's case must rise or fall." State v. Blakney, 189 N.J. 88, 96 (2006) (citing State v. Frost, 158 N.J. 76, 82 (1999)).

"Our task is to consider the 'fair import' of the State's summation in its entirety." State v. Jackson, 211 N.J. 394, 409 (2012) (quoting State v. Wakefield, 190 N.J. 397, 457 (2007)). Even if the prosecutor exceeds the bounds of proper conduct, "[a] finding of prosecutorial misconduct does not end a reviewing court's inquiry because, in order to justify reversal, the misconduct must have been 'so egregious that it deprived the defendant of a fair trial.'" Smith, 167 N.J. at 181 (quoting Frost, 158 N.J. at 83).

Here, we agree with the trial judge's assessment of the prosecutor's conduct. The summation was firmly tethered to the evidence in the case, which rebutted the defense contention that another man was L.S.'s assailant. We find no reason to reverse defendant's conviction.

### III.

Defendant argues the judge misapprehended the State's motion for an extended term and concluded the life sentence was mandatory and not

17

discretionary.  He also contends the life sentence subject to NERA was excessive.

"Appellate review of sentencing is deferential, and appellate courts are cautioned not to substitute their judgment for those of our sentencing courts." State v. Case, 220 N.J. 49, 65 (2014) (citing State v. Lawless, 214 N.J. 594, 606 (2013)).  Generally, we only determine whether:

> (1) the sentencing guidelines were violated; (2) the aggravating and mitigating factors found by the sentencing court were not based upon competent and credible evidence in the record; or (3) "the application of the guidelines to the facts of [the] case makes the sentence clearly unreasonable so as to shock the judicial conscience."
>
> [State v. Fuentes, 217 N.J. 57, 70 (2014) (alteration in original) (quoting State v. Roth, 95 N.J. 334, 364-65, (1984)).]

Here, the judge initially considered whether defendant was eligible for a discretionary extended term because he was a persistent offender.  Pierce, 188 N.J. at 169.  Defendant did not dispute at trial, nor does he dispute on appeal, that he qualifies as a persistent offender.  N.J.S.A. 2C:44-3(a).

The judge then found aggravating factors one, three, six, and nine.  See N.J.S.A. 2C:44-1(a)(1) (nature and circumstances of the offense and whether it was committed in "an especially heinous, cruel or depraved manner"); (a)(3) (the risk of re-offense); (a)(6) (the extent of defendant's prior criminal record);

and (a)(9) (the need to deter defendant and others).  The judge carefully explained his findings, which are supported by adequate credible evidence in the record.  He found no mitigating factors.  N.J.S.A. 2C:44-1(b).

The judge then noted,

> [e]ven were this [defendant's] very first felony conviction of any kind, he would, . . . be exposed to a life term with [thirty] years of parole ineligibility as a minimum.  Based on the extended term, the applicable statute makes it a [thirty-five]-year minimum term, and the [c]ourt is going to sentence [defendant] accordingly to a life term.  He is to serve [thirty-five] years as a minimum . . . .

At this point, the prosecutor reminded the judge that NERA applied.  The judge then stated, "There is [eighty-five percent] of the term would have to be served."  As noted, the JOC reflects both a life term subject to NERA and "a period of thirty-five . . . years of parole ineligibility on the extended sentence on [defendant's] life term."

We are unable to discern whether the judge imposed an ordinary term of life imprisonment subject to NERA, which is permitted under N.J.S.A. 2C:11-3(b)(1), or whether he viewed the life term as mandatory or discretionary pursuant N.J.S.A. 2C:44-3(a).  If the latter, the judge failed to follow the dictates of Pierce.  Our inability to properly evaluate both the procedural and substantive justification for the sentence compels us to vacate the sentence and remand to the court for resentencing.

To the extent the JOC can be read as having imposed two sentences, it must be corrected. Additionally, we hasten to add that our opinion should not be understood as disapproving any particular sentence the judge may impose in exercise of his broad sentencing discretion.

We affirm defendant's conviction. We vacate the sentence imposed and remand the matter to the trial court for resentencing. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5394-15T3